NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2025 IL App (4th) 250272-U

NO. 4-25-0272

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
June 11, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | McLean County |
| DAVID B. TERAN, | ) | No. 25CF21 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | William A. Yoder, |
| | ) | Judge Presiding. |

JUSTICE STEIGMANN delivered the judgment of the court.
Justices Zenoff and Grischow concurred in the judgment.

**ORDER**

¶ 1     *Held*:  The appellate court affirmed the trial court's order of pretrial detention because the State showed that defendant poses a real and present threat to the safety of the community and no condition or combination of conditions could mitigate that threat.

¶ 2     In January 2025, defendant, David B. Teran, was charged with one count of traveling to meet a child (720 ILCS 5/11-26(a) (West 2024)), two counts of indecent solicitation of a child (*id.* § 11-6(a-5)), one count of solicitation to meet a child (*id.* § 11-6.6(a)), and one count of grooming (*id.* § 11-25(a)). That same day, the State filed a petition to deny defendant pretrial release pursuant to article 110 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/art. 110 (West 2024)), commonly known as the Pretrial Fairness Act, which the trial court denied following a hearing.

¶ 3    Later in January 2025, the State filed a motion for relief, requesting that the trial court reconsider its denial of the State's petition to deny pretrial release. In February 2025, following a hearing, the court granted the State's motion and ordered defendant to be denied pretrial release. Defendant filed a motion for relief, which the court denied.

¶ 4    Defendant appeals, challenging the trial court's findings that (1) he poses a real and present threat to the safety of any person, persons, or the community, based on the specific, articulable facts of the case, and (2) no condition or combination of conditions can mitigate the real and present threat to the safety of any person, persons, or the community, based on the specific facts of the case. We affirm.

¶ 5                    I. BACKGROUND

¶ 6                A. The First Detention Hearing

¶ 7    On January 9, 2025, the State charged defendant by information with one count of traveling to meet a child (720 ILCS 5/11-26(a) (West 2024)), two counts of indecent solicitation of a child (*id.* § 11-6(a-5)), one count of solicitation to meet a child (*id.* § 11-6.6(a)), and one count of grooming (*id.* § 11-25(a)). That same day, the State filed a petition to deny pretrial release, alleging defendant was charged with detainable offenses and that he posed a real and present threat to the safety of the community. The motion requested an order that defendant have no contact with anyone under 18 years old.

¶ 8        1. *The State's Proffer and the Trial Court's Probable Cause Finding*

¶ 9    The trial court (Judge Scott Black, presiding) immediately conducted a pretrial detention hearing, at which the State made the following proffer regarding probable cause.

"On January 8 of 2025, a special agent with the Illinois State Police worked in an undercover capacity and had communications with the defendant. The

undercover officer posted an online advertisement for sexual services on a website.

Within the website, the posting was listed in the section for advertising female escorts. Within the advertisements, the undercover posted images of a young-looking female who was displaying herself in a sexual manner, including the image of her in her underwear.

The advertisement lists the age of the female as 22 years of age, and this is specifically identified as a female providing sexual services, including intercourse, kissing, oral, deep throat and others. The listing included a phone number to text in order to get rates for the sexual services, and specified that special requests cost money.

Using the phone number listed on the website, the defendant initiated contact with the undercover officer and engaged in a text message conversation on the afternoon of January 8. At 12:21 p.m., the defendant sent a text saying, how much for a QV. QV would be a shorthand term in prostitution to describe a quick visit for services.

The undercover officer sent a message to the defendant to tell him that the quick visit rate is $80. The defendant asked where the undercover officer was located. The defendant also stated in the text that he would meet with the undercover officer before 2 p.m.

At 12:55 p.m., the undercover officer sends the defendant a text saying, you just have to wear condoms because I'm 15 [*sic*] years of age, but I don't have any other rules. The defendant initially stated he did not want to meet with the

undercover officer because of her age, and he told her that the advertisement stated she was 22.

The defendant then asked if the undercover officer had Snapchat and said, do you have Snap? I would feel a little safer with verification. The undercover officer told the defendant she would not send him pictures, and asked if you come see me in person and you don't like how I look, you can just leave then.

The defendant asked for her location. The undercover officer asked the defendant if he was coming, and the defendant asked, do you provide protection. The undercover officer confirmed she had condoms at the location, and the defendant replied by saying, okay, I have to get ready.

At 2:03 p.m., the defendant texts, 'here'. The undercover officer provided him with a room number. The defendant then went to that room and met with the undercover officer. She again told the defendant she was 16 years of age. The defendant then gave her the $80 that had been agreed upon.

The defendant was taken into custody by other officers. After his arrest and after being informed of his *Miranda* rights [(*Miranda v. Arizona*, 384 U.S. 436 (1966))], the defendant agreed to speak with officers. The defendant admitted he had communicated with a female on the website known for its work in sexual acts, and that he really came to the hotel to meet with a 16-year-old girl.

He told the officer he traveled to the hotel from his residence with his two children inside the vehicle. The two children were ages two and three, and that he left them in the car when he went into the hotel to meet with the undercover officer.

He confirmed to the officer that once he met with the undercover officer when he got into the hotel room and then he gave her $80, and then he began to remove his clothes before being arrested. The defendant's age is 25 years of age."

¶ 10    The trial court stated that it found probable cause for defendant's detention.

¶ 11    2. *Arguments Regarding Denial of Defendant's Pretrial Release*

¶ 12    Upon request by the State, the trial court took judicial notice of (1) the probable cause proffer, (2) defendant's conviction in a separate case for failure to notify damage to an unattended vehicle, a Class A misdemeanor, for which defendant was on court supervision since March 2023, (3) a 2016 juvenile adjudication for driving without a valid license, a Class A misdemeanor, (4) a 2013 juvenile adjudication for theft, a Class 3 felony, and (5) the pretrial investigation report. The hearing proceeded to argument.

¶ 13    a. The State's Argument

¶ 14    The State argued as follows:

"As the Court is aware, what we have here in our State's petition to deny pre-trial release, there are three prongs that the State has to prove, the first of which is that these charges fall under a qualifying offense, and I believe all the charges that are listed, I believe, as Counts I through V, all qualify as offenses.

And we have to establish by clear and convincing evidence that they occurred, and I believe from the proffer established today by the State, it's very clear that these offenses occurred.

***

Next, we move on to whether the defendant, through the pre-trial release, poses a real and present threat to the safety of any person or persons in the

community. And the State's argument is that the defendant very much is a threat to various members of the community, namely underage females.

Now, from the proffer, we've established that there is no named victim. However, this was a defendant who was going to a hotel to have sex with a child. The defendant had roughly an hour and a half to decide not to do this. He still traveled to that location to meet a minor for the purpose of having sex.

And I think some of the concerning language used in the text messages that are established in the [probable cause] statement are also concerning when he asks how much for a QV. I don't believe most people know QV is a shorthand term in prostitution to describe a quick visit. So this shows this is a person who's most likely participated in this type of activity before. So I think various language like that, it shows he's a danger.

And I think most troubling about this entire situation is we have a defendant who left two children, ages two and three, inside a motor vehicle to try to have sex with another child. So I think from a dangerous elements point, I believe it's very clear and it's very apparent that he is a danger to anyone under the age of 18 who's a female.

*** I understand it's a Class A misdemeanor. I understand he's on supervision, but he's still under court monitoring while he's engaging in this, and part of the terms of court supervision are that you do not commit another illegal offense, and these are all clearly offenses. So I think for the second prong, I believe that it's very much proven by the State that this defendant is a danger.

So then we move on to whether there's less restrictive means involved that could potentially prohibit this danger, and the State would argue that there simply is nothing that we can do at this point, outside of pre-trial incarceration, to avoid this defendant potentially being a danger.

This is a defendant who sought out on a website to participate in a sexual act. He was informed multiple times that this person was 16 years of age. He still followed through with it. He still traveled there. So what restrictive means can we put in place to avoid this defendant continuing to go on websites like these?

And most importantly, if we're looking at something like electronic monitoring, how is that going to—if he's at home, how is that going to monitor who comes in and out of the house? I think this is a defendant who very much seems, from the language he uses, that he participated in these types of activities before.

And what we would have here is a situation where he could potentially use his phone, use electronic devices to go on social media sites, go on these various dating apps and bring potentially children to the household. So I don't think electronic monitoring is able to avoid some of these pitfalls that we would find here.

In addition, I believe the defendant, he has four children from the pre-trial service report all inside his household. Nine, seven, three and two. He's trying to sleep with a 16-year-old. That isn't that far off from a nine-year-old. I mean we have a situation here where [electronic monitoring] is not a good use, and I don't believe it would be appropriate.

When we look at other less restrictive means, a no contact with anyone under 18, it's also not practical. So I don't believe there are any possible conditions in place that are less restrictive that could potentially avoid some of the dangers that this defendant now poses to the community, mainly individuals under the age of 18 female. Thank you."

¶ 15                                    b. Defendant's Argument

¶ 16         Defendant argued as follows:

"Your Honor, just briefly in regard to the probable cause statement that was made, they said that my client texted many things that show he has done this before or knew what he was doing. There's also text in there that says he was trying to verify that this was not a minor and trying to confirm that, and so it does show— I'm not sure if there's a motion that will be filed in the future or anything like that. Obviously, probable cause is found, but I don't think the case may be as clear as the State wants it to be based on some of the things it sounds like he tried to do.

In regards to conditions for release, my client is employed, has a good job, supports his family. And for the State to say that a charge like this, that there are basically no conditions for release, that basically flies in the face of everything we've kind of been told about the statute and why it was made.

The State is not allowed to argue that because of a certain type of offense, that a person can't be released. Every, every charge, no matter how serious or heinous, the presumption is that a person should be released. It's only when the State shows that a person can't be released for a specific reason, that they should be detained. And basically the State hasn't shown that specifically for my client.

They said that because this act and this crime is a certain crime, then there is no conditions that could be allowed, and my client shouldn't be released, but specifically to my client, they haven't shown that.

My client has barely any criminal history. Scores a 2 on our new scale with a report that we have, has lived locally, has a job, has children that he cares for, and would be willing to comply with anything the Court ordered in regards to protecting society. And so the State has basically just argued that because of this type of offense, there's no conditions that exist that would keep the community safe.

And, basically, that's just not a valid argument because all of these, every crime in Illinois that's detainable, the presumption is that they should be released, unless there's specific arguments. They don't exist because my client doesn't have a criminal record basically, and so we would ask the Court to find that they have not proven their certificate."

¶ 17                                c. The Trial Court's Decision

¶ 18        Following arguments, the trial court found that (1) the offense was a qualifying offense for detention and (2) defendant posed a real and present safety threat to the community. However, the court concluded that the State had not proved by clear and convincing evidence that there was no condition or combination of conditions that could mitigate the threat posed by defendant's pretrial release. The court stated as follows:

"So here, we have a particularly heinous offense, but at the same time, the defendant is a resident in the community, family ties, children. He has a job, which he apparently is supporting these children in his household. And I have [a risk assessment instrument] that scores him at a level 2.

Based upon all of those factors, the Court's going to find that—and also taking into consideration the statutory presumption of release, as [defense counsel] pointed out, I'm going to find that the State has not proven by clear and convincing evidence that there is no condition or combination of conditions that can mitigate the threat."

¶ 19     3. *Arguments Regarding Conditions of Defendant's Pretrial Release*

¶ 20     The trial court then proceeded to a hearing on appropriate release conditions.

¶ 21     The State asked that as a condition for his release, the trial court order defendant to not be around anyone under the age of 18 and be placed with pretrial services. Defense counsel responded as follows:

"Your Honor, we have no objection to pre-trial services. In regards to any minors under 18, as the State pointed out, my client has four children that live with him and his wife. He is a caretaker for them, and so that restriction makes it very difficult for him to go back home, so we would be objecting to that. Restrictions on minors that are not his children, I think, would be more appropriate. There is no indication that he is any danger to his own children. I understand that they have implied that, but I don't think that's (something)."

¶ 22     The State rebutted that defendant not being allowed to be around people under 18 years old was appropriate because defendant's conduct of leaving his 2 and 3 year old children in the car while he engaged in sexual conduct with a prostitute endangered the children: they were too young to be left alone in a vehicle in January, whether the car was idling or off.

¶ 23     The trial court then delivered its decision, stating that it had taken judicial notice of the proffers, arguments, and pretrial investigation report. Based on that information, the court

ordered that as conditions for defendant's pretrial release, he (1) shall appear in court to answer the charges as ordered by the court until discharged or the final order, (2) must admit to the orders and process of the court, (3) must not violate any criminal statute or law of any jurisdiction, (4) must file a written notice of any address change with the circuit clerk within 24 hours of any change, (5) shall have no contact, directly or indirectly, with any individual under the age of 18 years of age, and (6) shall immediately report to the Office of Statewide Pretrial Services and comply with all reporting requirements of the pretrial supervision programs.

¶ 24                              B. The State's Motion for Relief

¶ 25       On January 30, 2025, the State filed a motion for relief pursuant to Illinois Supreme Court Rule 604(h) (eff. Apr. 15, 2024), requesting that the trial court reconsider its denial of the State's petition to deny pretrial release filed on January 9, 2025. The motion alleged, among other things, that (1) "the court failed to acknowledge that the 'mitigating factors' are actually aggravating in the Defendant's situation" and (2) "the court failed to acknowledge pre-trial services['] inability to properly monitor someone to prevent them from having contact with children."

¶ 26       On February 28, 2025, the trial court (Judge William Yoder, presiding) conducted a hearing on the motion for relief. At the start of the hearing, the court noted that it had taken judicial notice of the entire court file, reviewed the State's petition, and read through the transcript of the detention hearing.

¶ 27                              1. *The State's Argument*

¶ 28       The State argued that the trial court had incorrectly attributed certain evidence as mitigating when it was actually aggravating. First, the text messages to the victim asking for verification on Snapchat were better characterized as an attempt to avoid leaving a record because

"a lot of people believe [they are] not recoverable, the messages that are sent." Despite the undercover officer's not sending a verification photo, defendant nonetheless arrived at the hotel. Second, the court did not give sufficient weight to the defendant's use of the term "QV," meaning quick visit, which was "prostitution lingo." This showed that this offense was not defendant's first time soliciting prostitution. Third, the court did not put enough weight on the circumstances of defendant's arrest—specifically, the allegations that "there was a two- and a three-year-old child left inside a vehicle in a parking lot in December, while the defendant goes upstairs in an attempt to have sex with what he believes is a 16-year-old." Instead, the court gave too much weight to defendant having a family and needing to support them. Last, regarding the possibility of defendant violating the release order, the State argued the following:

> "And I guess what the State is attempting to state is that this took place six weeks ago, this hearing. And in that six weeks, there's been nothing put in place that could monitor the defendant effectively. At this time the defendant could leave this courthouse, get on his phone, go to the same website that he went to that started this, and do the same exact thing. There would be nothing to prevent that. Pretrial cannot monitor his internet usage. They cannot monitor his phone. Nobody can monitor it. At this time, the only thing that's put in place is that this defendant is not allowed to be around anyone under the age of 18. We have no way of enforcing that at this time. We have no ability to regulate his phone, his internet searching, any type of monitoring. At this time the defendant is free to do exactly what brought him here six weeks ago."

¶ 29                                    2. *Defendant's Argument*

¶ 30    Defense counsel argued that defendant had responded initially to an advertisement of an individual purporting to be a 22-year-old adult, and only after he solicited her did she tell him that she was 16 years old. At that point, he attempted to verify her age by asking for a photo of her through Snapchat. That verification did not come until just before defendant was arrested. Counsel argued that the use of "QV" did not necessarily indicate unlawful activity. Further, counsel noted that defendant had no violent criminal history.

¶ 31    Defense counsel noted that according to the "Virginia Pretrial Risk Assessment Instrument Revised, the PRI score," defendant was the lowest level for violating the conditions of release. Further, the trial court correctly considered the mitigating evidence at the detention hearing that defendant (1) wanted to support his children and needed to be on pretrial release, (2) was a resident of the county with familial ties in the community, (3) was working at Rivian, and (4) had no mental health, substance abuse, or violence concerns.

¶ 32    Citing *People v. Smith*, 2025 IL App (4th) 241441-U, defense counsel argued that the State was "asking for a broad sweep, *** because there's no way to keep my client from having any contact with any minor, that therefore he should be detained. And I believe the caselaw shows that that is flawed."

¶ 33                    3. *The Trial Court's Decision*

¶ 34    Following arguments, the trial court agreed the nature of the charge was insufficient to order detention. However, the court concluded that the facts of this case showed that no less restrictive conditions than detention would be appropriate, explaining as follows:

"So in this case, the defendant was on court supervision when he was charged with this offense. The defendant answered an ad *** that offered sexual services, claiming that the person providing those services was 22 years old. When

- 13 -

the defendant responded to that add [*sic*] by way of, I think it was text, he received a response back *** at some point indicating that they would do just about anything that you want me to do, outlining exactly what services could be. And the defendant *** sent a text saying: How much for a QV? That apparently being shorthand for quick visit for services.

*** The undercover officer sent a message back indicating the rate that was going to be charged, and also sent back a message indicating: You just have to wear condoms because I'm 16 years old, but other than that, I don't have any other rules.

The defendant then questioned her age, indicating he didn't want to meet with her because of her age. And the entry restated: The advertisement said you were 22. *** The defendant then asked her if she had Snapchat, because he said he would feel a little safer with verification. The undercover officer indicated that she would not be sending pictures, but then indicated to him, if you come and see me in person and you don't like how I look, you can just leave.

At that point, in the defendant's mind, he was going to meet a 16-year-old child. He asked for her location, and the undercover officer asked if the defendant was coming. He asked if she provided protection. She said: Yes. He said: Okay. I have to get ready.

*** [A]n hour and a half after the initial contact, the defendant sent a text saying he was there. She then provided a room number to him, and he went to that room to meet with her. She again reaffirmed that she was 16 years of age in person with the defendant. The defendant gave her $80 that had been agreed upon.

The ***  defendant, after he paid her, then began to remove his clothes, at

which time he was arrested. Defendant's 25 years old at that time. The defendant indicated to the officers that he traveled to the hotel from his residence, but there were two children inside of his vehicle; the two children were ages 2 and 3; that he left them in the car outside. The State indicated this occurred in December. It actually occurred January the 8th of this year. There's been no indication in the record as to what the temperature was. I'm going to guess the odds are in Illinois, on January the 8th, it was cold.

\* \* \*

The interesting part of this—so the judge at the [Pretrial Fairness Act] hearing established that there was probable cause for the charged offenses. He established, and this Court agrees, \*\*\* that the defendant committed a qualifying offense, and the court agreed that the defendant posed a real and present threat to the safety of the community, or one or more persons in the community. \*\*\* [T]he court used the language, this was a heinous offense—he said specifically I think, that would classify as a sex offence [*sic*], it's a heinous offense. He indicated that the court is to consider the identity of person or persons whose safety the defendant is believed to pose a threat, and to the nature of the threat, and it is a serious threat. In this case with young females. That I think is proven by the proffer. \*\*\* And the Court found that the first and second elements of the current statute in relation to detention has been proven. Then the Court went through the nature of the factors that could mitigate the defendant's risk.

When you look at the factors in relation to this defendant, and you look at the facts of this case and the individual factors of the defendant, going backwards,

number one, he was on a continuing order, don't violate the law. He had time to contemplate his decision. He knew he was driving to have intercourse with a 16-year-old. He *** knew the ramifications of having sex with a 16-year-old. When he found out that—she said, I'm 16, that's when he said, let's move over to Snapchat. I don't know if that was to verify that she was in fact 16, or to figure out if this was some form of law enforcement trap.

The defendant *** potentially used code, I'm going to say, to describe he wanted a quick visit with this 16-year-old. The defendant knew the risks when he was told that the girl was 16. And the defendant indicated—which indicates the defendant was suspicious. Even with those suspicions, *** instead of saying, you know what, maybe this prostitute isn't one I want to risk exposure to. Maybe I'll just go find somebody that doesn't tell me that they're 16. Despite the fact that he knew the risk, he *** proceeded an hour and a half later to the hotel. He did that knowing the risks but disregarding them. He took his two—he was apparently babysitting his children, because I can't think of any other reason that you would take your 2 and 3-year-old children in the car with you to visit a prostitute knowing they are not going in—it's January 8th, you know they're not going in. They're going to stay in the car. Which is what he did. He then enters the room, pays, and begins to undress.

All of that conduct shows an uncontrollable desire to engage in sex with a minor. That resembled an addiction. It resembles what we see everyday in this court as it would relate to a heroin addiction. They know the ramifications. They know they might die from taking the next injection of heroin. Because, number one, they

could overdose on the heroin; number two, it might be laced with fentanyl. But ***
they disregard that risk and they inject themselves anyway. That's the nature of
addiction. Doing something that you know could have significant adverse effects
to you, yet you disregard those obvious risks or ramifications, and you engage in a
conduct. That's what it appears to this Court that this defendant was doing on
January the 8th, *** that he could not stop himself from proceeding over this hour
and a half period of time to visit a 16-year-old for sexual purposes, to the extent
that he took his children in the car with him on what had to be a cold day, to leave
them in the car. He did not consider the ramifications of his conduct. He just had,
in this court's opinion, it would seem, an addictive need that needed to be
addressed.

This makes the defendant in this case an extreme risk that cannot be
supervised by pretrial service[s]. Similar to the way that an addiction to heroin
cannot be adequately addressed by pretrial services. When pretrial services—it's
clear, number one, they do not do home visits. They do check-ins. They don't
necessary [*sic*] have in-person visits with the individual. They remind them of court
dates and whatnot. And although it's a quality program, there's no dispute that they
cannot—in the proffer it was indicated that they acknowledge that they cannot
adequately supervise an individual's electronic social media involvement, whether
that person's having contact with minor victims. They cannot supervise it.

This Court believes that the risk to the public, the dangerousness to the
public, cannot be adequately [m]itigated by less restrictive conditions than
detention. The Court is going to find that—I'm going to go through an initial

detention and find that probabl[e] cause has been established for the charged offenses. That detention on *** —dangerousness grounds; that the State has proven by clear and convincing evidence that the proof is evident, or the presumption is great that the defendant has committed a qualifying offense for which he is statutorily eligible for detention; that the defendant poses a real and present threat to the safety of the community, or one or more persons in the community; and the Court finds that no release conditions or combination thereof can mitigate the foregoing safety threat."

¶ 35 Ultimately, the trial court granted the State's motion for relief, concluding:

"[L]ess restrictive conditions cannot be meaningfully achieved with the available conditions of pretrial release; that otherwise appropriate and available release conditions have been unsuccessful in the defendant's other matters, the fact that he was on supervision and required not to violate the law while on supervision; that there's a high likelihood that he would commit new criminal offenses that granted pretrial release. *** [T]his Court believes this, in relation to what would appear to this Court to be addictive behavior. I'm going to show that the defendant has a history of disobeying court orders, that being supervision."

¶ 36 Defense counsel then filed a motion for relief, reasserting the same arguments she had made against the State's motion for relief. Neither party made oral arguments, and the trial court ultimately denied defendant's motion for the same reasons it already stated.

¶ 37 This appeal followed.

¶ 38                                    II. ANALYSIS

¶ 39    Defendant appeals, challenging the trial court's findings that (1) he poses a real and present threat to the safety of any person, persons, or the community, based on the specific, articulable facts of the case, and (2) no condition or combination of conditions can mitigate the real and present threat to the safety of any person, persons, or the community, based on the specific facts of the case. We affirm.

¶ 40    A. The Applicable Law and Standard of Review

¶ 41    Under section 110-6.1 of the Code, "[D]efendants shall be presumed eligible for pretrial release" 725 ILCS 5/110-6.1(e) (West 2024). "[T]he fact that a person is charged with a detainable offense is not enough to order detention." *People v. Atterberry*, 2023 IL App (4th) 231028, ¶ 18.

¶ 42    Once the State files a petition to deny pretrial release, the trial court must hold a hearing. 725 ILCS 5/110-6.1(a) (West 2024). At the hearing, the State must prove by clear and convincing evidence that (1) the proof is evident or presumption great that the defendant committed a detainable offense; (2) the defendant poses a real and present threat to the safety of any person, persons, or the community, based on the specific, articulable facts of the case; and (3) no condition or combination of conditions can mitigate the real and present threat to the safety of any person or the community, based on the specific facts of the case. See *id.* § 110-6.1(e)(1)-(3).

¶ 43    When assessing dangerousness, the trial court may consider, among other things, (1) the nature and circumstances of the charged offense, (2) the history and characteristics of the defendant, (3) the identity of the person whose safety the defendant threatens, (4) any statements made by the defendant, (5) the defendant's age and physical condition, (6) the age and physical condition of any victim, (7) the defendant's possession of or access to weapons, (8) whether the

defendant was on probation or other similar conditions at the time of the current offense, and (9) any additional factors bearing on the defendant's "propensity or reputation for violent, abusive, or assaultive behavior, or lack of such behavior." *Id.* § 110-6.1(g)(9).

¶ 44    Regarding whether conditions exist that can mitigate a defendant's dangerousness, the trial court must consider various factors, including (1) "the nature and circumstances of the offense charged"; (2) "the weight of the evidence against the defendant"; (3) "the history and characteristics of the defendant," including "the defendant's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past relating to drug or alcohol abuse, conduct, history criminal history [*sic*], and record concerning appearance at court proceedings"; (4) "the nature and seriousness of the real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case"; and (5) "the nature and seriousness of the risk of obstructing or attempting to obstruct the criminal justice process that would be posed by the defendant's release, if applicable." *Id.* § 110-5(a)(1)-(5). In each case, a court must conduct an "individualized" assessment of the propriety of detaining the defendant versus releasing him or her with conditions. *Id.* § 110-6.1(f)(7).

¶ 45    Because the parties here relied on proffer and documentary evidence at the pretrial detention hearing, we review the trial court's decision *de novo*. See *People v. Morgan*, 2025 IL 130626, ¶ 54 ("[W]hen the parties to a pretrial detention hearing proceed solely by proffer, the reviewing court is not bound by the circuit court's factual findings and may therefore conduct its own independent *de novo* review of the proffered evidence and evidence otherwise documentary in nature.").

¶ 46                              B. This Case

¶ 47    We earlier set forth the trial court's lengthy, thoughtful, and detailed analysis of the circumstances of the offense, the statutory factors for detention, and least restrictive alternatives at the hearing on the State's petition for relief (*supra* ¶¶ 33-35), and for the same reasons, we fully agree with the trial court's findings that pretrial detention is necessary in this case.

¶ 48    Contrary to defendant's assertion that the charges are the only information supporting a finding that he poses a real and present safety threat and thus are insufficient to order detention, the evidence proffered by the State in this case shows that he poses a threat to his children and underage girls. As the trial court noted, defendant left his two toddlers in a car during likely freezing weather conditions while he solicited an underage sex worker. Further, he was on court supervision at the time of the offense.

¶ 49    Likewise, the trial court was correct when it determined that there were no conditions or combination of conditions that would mitigate the real and present threat defendant poses to his community. Defendant clearly demonstrated interest in and willingness to pay a 16-year-old for sex and to plan for this transaction via cell phone text and app messages, such as by attempting to move the conversation to Snapchat under the apparent belief that his conversation would not be recoverable. Ultimately, his compulsion to engage in this behavior caused him to leave two toddlers in their car seats in the parking lot of a motel in January. Notably, we are aware of no conditions for defendant's pretrial release that could mitigate the threat of additional digital communication with underage girls, given defendant's risk-taking behavior.

¶ 50    Because we conclude that the trial court's findings of fact and conclusions of law (1) adequately explain the decision and (2) were correct, we affirm the trial court's judgment.

¶ 51                                III. CONCLUSION

- 21 -

¶ 52        For the reasons stated, we affirm the trial court's judgment.

¶ 53        Affirmed.