2025 IL App (1st) 251126-U

No. 1-25-1126B

Order filed August 29, 2025

Fifth Division

NOTICE: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 25 CR 279001 |
| | ) | |
| MARCUS HOLLOMAN, | ) | Honorable |
| | ) | Domenica A. Stephenson |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

JUSTICE NAVARRO delivered the judgment of the court.
Justice Mitchell concurred in the judgment.
Presiding Justice Mikva dissented.

**ORDER**

¶ 1     *Held*:  We affirm the trial court's detention order.

¶ 2     Defendant Marcus Holloman appeals from the trial court ordering his detention pursuant

to section 110-6.1(i-5) of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/110-6.1(i-

5) (West 2022)), as amended by Public Act 101-652, § 10-255 and Public Act 102-1104, § 70 (eff.

Jan. 1, 2023), commonly known as the Pretrial Fairness Act. On appeal, relying on his motion for

relief filed in the trial court, Holloman contends that the trial court erred in ordering his pretrial

detention because the State failed to meet its burden to prove that: (1) the proof was evident, or the presumption great, that he committed a detainable offense; (2) he posed a real and present threat to any specific person or the safety of the community; and (3) no condition, or combination of conditions, of pretrial release could mitigate that threat. For the reasons that follow, we affirm the court's pretrial detention order.

¶ 3                                    I. BACKGROUND

¶ 4      The State charged Holloman with multiple sex offenses, including criminal sexual assault based on the victim being a family member and under 18 years of age, stemming from actions against his then-girlfriend's daughter approximately seven years earlier. After being arrested in February 2025, the State filed a petition to detain Holloman while awaiting trial. At the conclusion of a detention hearing, Judge Luciano Panici Jr. granted the State's petition and ordered Holloman detained while awaiting trial.

¶ 5      Two months later, Holloman filed a petition to be released from custody, noting that, at each subsequent appearance of his before the trial court, it must find that detention remained necessary. Holloman's next court appearance was before Judge Domenica A. Stephenson. During that court appearance, defense counsel noted that Holloman had a 17-year-old son, who would be attending college next year and Holloman was an active part of his son's life. Defense counsel observed that Holloman worked for his family's business, doing maintenance on a multi-purpose building. Defense counsel highlighted that the alleged incidents occurred in 2018, and when Holloman was charged in 2025, he willingly turned himself in. To this end, defense counsel argued that Holloman was not a flight risk or a danger to the community, and electronic monitoring or GPS monitoring could mitigate any threat posed by him.

¶ 6      The State highlighted that, between November 2017 and April 2018, Holloman was in his late 40s or 50 years old and the victim was 15 years old. The State asserted that Holloman tried to convince the victim to have sex with him, but, at first, she refused. Then, Holloman offered her money and to buy her other items, and she agreed to have sex with him, which occurred several times. Each time they had sex, the victim's mother was either out of the residence or sleeping elsewhere in the residence. Holloman and the victim exchanged sexually explicit photographs through text messages as well as text messages where he asked the victim for sex. According to the State, in April 2018, the victim made an outcry to her mother and friends, and text messages corroborated the outcries. Thereafter, the police arrested Holloman. When questioned by a detective, Holloman stated "the relationship between himself and the victim was not forced or a mutual thing because the victim was only 15 years old at the time." When the detective asked Holloman if the victim was lying, Holloman said "no" and asked for an attorney. During the investigation, someone—though it is unclear exactly who—interviewed the victim's mother, and she revealed that Holloman once gave her a sleeping pill in order to have sex with the victim.

¶ 7      In addition, the State noted that, in 1995, Holloman was convicted of voluntary manslaughter in Ohio, though it could not obtain details on the case. The State also observed that Holloman had previously been convicted of manufacture and delivery of a controlled substance in 1988 for which he received three years' imprisonment and burglary in 1986 for which he received probation. Based on the circumstances, the State argued that Holloman was a danger to the victim and the community at large, in particular young girls, and no conditions of pretrial release could mitigate that threat. The trial court found the proof was evident, or the presumption great, that Holloman committed a detention eligible offense, that he posed a real and present threat to the safety of the community, and no condition, or combination of conditions of pretrial release could

mitigate that threat. It accordingly denied Holloman's petition for release and ordered him to remain detained while awaiting trial.

¶ 8    Holloman subsequently filed a motion for relief, challenging the findings made by Judge Stephenson at the conclusion of his detention hearing. He argued that the State failed to show the proof was evident, or the presumption great, that he committed the charged offense, that he was a danger to the victim or the community, and that no condition, or combination of conditions, of pretrial release could mitigate the threat he posed. Following argument, Judge Stephenson denied Holloman's motion for relief.

¶ 9    This appeal follows.

¶ 10                                   II. ANALYSIS

¶ 11    Holloman has elected to stand on his motion for relief filed in the trial court rather than file a memorandum on appeal, which is permissible. See Ill. S. Ct. R. 604(h)(7) (eff. Apr. 15, 2024).

¶ 12    All defendants begin with the presumption that they are eligible for pretrial release. 725 ILCS 5/110-6.1(e) (West 2022). In order to detain Holloman while awaiting trial at his detention hearing, the State had the burden to prove by clear and convincing evidence three propositions. *Id.* First, the State had to show the proof is evident, or the presumption great, that he committed a detention eligible offense. *Id.* § 110-6.1(a), (e)(1). Second, the State had to show that Holloman poses a real and present threat to the safety of the community or any specific person therein. *Id.* § 110-6.1(e)(2). Third, the State had to show that no condition, or combination of conditions, of pretrial release could mitigate that threat. *Id.* § 110-6.1(e)(3). When a detention hearing proceeds solely by proffer, we review the trial court's determination at the conclusion of it *de novo*. *People v. Morgan*, 2025 IL 130626, ¶ 51.

¶ 13    We begin with whether the State showed the proof is evident, or the presumption great, that Holloman committed a detention eligible offense. In the State's petition to detain Holloman while awaiting trial, it alleged that he committed criminal sexual assault based on the victim being a family member and minor (see 720 ILCS 5/11-1.20(a)(3) (West 2020)), which is a detention eligible offense. See 725 ILCS 5/110-6.1(a)(1.5) (West 2022). In the first detention hearing, this was the charge the trial court focused on. But the record shows that Holloman was also charged with aggravated criminal sexual based on causing bodily harm to the victim. See 720 ILCS 5/11-1.30(a)(2) (West 2022). And in the subsequent detention hearing, this was the charge the trial court focused on. But, because our review is *de novo*, our review is independent of the trial court's reasoning, and "[w]e can affirm the trial court's conclusion on any basis apparent from the record." *People v. Wilson*, 2025 IL App (1st) 242454-U, ¶ 24. In turn, we focus on the proof of Holloman committing criminal sexual assault, as was done by the trial court in the first detention hearing.

¶ 14    Under the circumstance of this case, to prove Holloman committed criminal sexual assault, the State had to prove he "commit[ed] an act of sexual penetration and *** [he] is a family member of the victim, and the victim is under 18 years of age." 720 ILCS 5/11-1.20(a)(3) (West 2020). According to the Criminal Code of 2012, " '[f]amily member" means "if the victim is a child under 18 years of age, an accused who has resided in the household with the child continuously for at least 6 months." *Id.* § 11-0.1. Moreover, for purposes of criminal sexual assault, the defendant need not know the victim is a minor. See *People v. Houston*, 2024 IL App (3d) 210324, ¶ 18.

¶ 15    According to the State, the victim, who was 15 years old at all relevant times, was Holloman's then-live-in girlfriend's daughter and the incidents occurred over the course of six months, between November 2017 and April 2018. Thus, the proof is evident, or the presumption great, that the victim constituted a family member of his, and she was under 18 years old. See 720

ILCS 5/11-0.1 (West 2020). In addition, the victim made multiple outcries about the incidents between her and Holloman, and evidence recovered from the victim's phone corroborated the outcries. According to the State, the victim and Holloman also exchanged sexually explicit photographs through text messages. Moreover, when questioned by a detective, Holloman stated "the relationship between himself and the victim was not forced or a mutual thing because the victim was only 15 years old at the time." When the detective asked Holloman if the victim was lying, Holloman said "no" and asked for an attorney. Although the State waited approximately seven years to charge Holloman, based on the victim's outcries, which were corroborated by text messages, and Holloman's tacit admission to the offense, the State showed the proof is evident, or the presumption great, that Holloman committed criminal sexual assault.

¶ 16    We now turn to the second proposition, which concerns Holloman's dangerousness. The State's proffer at the second detention hearing demonstrated that Holloman was willing to use his position of authority over the victim, a 15-year-old girl with whom he lived, and go to extreme lengths in order to have sex with her several different times. When the victim rejected his initial advances, he bribed her with items, including money. When the presence of the victim's mother was an impediment, Holloman gave the mother a sleeping pill. The alleged actions by Holloman demonstrate that he is a danger to any underage female with which he comes into contact, whether that be in public or in his own personal residence.

¶ 17    Nevertheless, Holloman argues that he is not a danger to anyone because seven years have passed since the alleged offenses and there is no evidence that he committed any additional crimes. Additionally, he highlights that, when he was charged in this case, he willingly turned himself into the police. But this purported mitigating evidence ignores the gravity of the allegations against Holloman, the lengths he went to engage in sexual relations with a minor and his previous

conviction for voluntary manslaughter. While the State did not know the specific facts of that case, the mere fact that Holloman has killed another individual lends credence to our conclusion that he is a danger to the community based on his alleged actions in this case. See 725 ILCS 5/110-6.1(g)(2) (West 2022) (stating that, among the "[f]actors to be considered in making a determination of dangerousness," the court may consider "[t]he history and characteristics of the defendant including *** [a]ny evidence of the defendant's prior criminal history indicative of violent, abusive or assaultive behavior, or lack of such behavior"). Based on these facts, the State proved that Holloman poses a real and present threat to the safety of the community.

¶ 18    Lastly, we turn to whether any condition, or combination of conditions, of pretrial release could mitigate the threat that Holloman poses to the community. Given Holloman's alleged willingness to do whatever it takes to have sex with a minor and his criminal background, the only foolproof way to prevent him from taking advantage of another similarly youthful victim in the same way is by his detention while awaiting trial. See *People v. Teran*, 2025 IL App (4th) 250272-U, ¶¶ 49-50 (affirming the trial court's pretrial detention order where the "[d]efendant clearly demonstrated interest in and willingness to pay a 16-year-old for sex and to plan for this transaction via cell phone text and app messages" and "no conditions for [the] defendant's pretrial release that could mitigate the threat of additional digital communication with underage girls, given defendant's risk-taking behavior").

¶ 19    In his motion for relief, Holloman suggested multiple conditions of pretrial release, such as electronic monitoring, GPS monitoring, a curfew and a no-contact order, but none of these conditions are appropriate for him based on the circumstances. Electronic monitoring, GPS monitoring or a curfew would still allow Holloman access to technology to solicit underaged girls. See *People v. Opas*, 2025 IL App (1st) 250208, ¶ 62 (in a case involving sexual conduct with a

16-year-old girl, "[e]lectronic monitoring does nothing to prevent [the defendant] from soliciting online, as he did here, or from luring girls to his home, as he also did here"). While a no-contact order would mitigate any threat Holloman poses toward the victim in this case and her mother, it does nothing to protect the community at large. Moreover, Holloman has two prior felonies in Illinois and one from Ohio, which demonstrates his unwillingness to follow the rules of society. See *People v. Davis*, 2023 IL App (1st) 231856, ¶ 31 (observing that the "[d]efendant's history showed an unwillingness to follow the rules set out by law enforcement authorities" and given the State's proffer about his criminal history, the trial court did not err "in concluding that [he] presented a threat to the community that no conditions of pretrial release could mitigate"). Therefore, the State proved that no condition, or combination of conditions, of pretrial release could mitigate the threat that Holloman poses to the community. Because the State presented clear and convincing evidence on all three propositions, we affirm the trial court's detention order.

¶ 20                                    III. CONCLUSION

¶ 21    For the reasons stated, we affirm the order of the circuit court of Cook County.

¶ 22    Affirmed.

¶ 23    PRESIDING JUSTICE MIKVA, dissenting:

¶ 24    Although I disagree that pretrial detention is warranted here, the majority's analysis of this issue is in keeping with my understanding of the scope of our review in cases, like this one, where the defendant has not immediately appealed the court's pretrial detention order but has instead waited until after one or more subsequent appearances to do so. Section 110-6.1(i-5) of the Pretrial Fairness Act provides that "[a]t each subsequent appearance of the defendant before the court, the judge must find that continued detention is necessary." 725 ILCS 5/110-6.1(i-5) (West 2022). Other panels of this court have concluded that our review of a pretrial detention order following

No. 1-25-1126B

such subsequent appearances is subject to a "less demanding" standard and limited to whether, under section 110-6(i-5) the absence of changed circumstances means that continued detention was necessary. See *People v. Thomas*, 2024 IL App (1st) 240479, ¶ 14, and *People v. Williams*, 2025 IL App (1st) 242594-U, ¶ 14 (adopting the reasoning in *Thomas*).

¶ 25    These decisions ignore the fact that Illinois Supreme Court Rule 604(h) was amended in 2024 specifically to permit appeals from pretrial detention orders "at any time prior to conviction." Ill. S. Ct. R. 604(h)(3) (eff. Apr. 15, 2024). Under that amended rule, Mr. Holloman may challenge at this juncture not only the court's most recent decision that continued detention was proper, but previous interlocutory detention rulings, including the court's initial decision that the State met its burden under the Act. The limitation on the issues on appeal is that "as a prerequisite to appeal, the party taking the appeal shall first present to the trial court a written motion requesting the same relief to be sought on appeal and the grounds for such relief." Ill. S. Ct. R. 604(h)(2) (eff. Apr. 15, 2024). Both of the parties in this case and the majority decision all recognize this and appropriately examine whether the State met its burden at the initial detention hearing and what the evidence and arguments were at both detention hearings. While I agree with the majority's approach, I disagree with the outcome.

¶ 26    Mr. Holloman stands charged with the criminal sexual assault of his then-girlfriend's minor daughter. If proven, these serious allegations will demand legal consequences. It was the State's burden, however, to prove not only that Mr. Holloman was charged with this qualifying offense (725 ILCS 5/110-6.1(a), (e)(1) (West 2022)) but that he is "a *present* threat to the safety of any person or persons or the community" (emphasis added) (*id.* § 110-6.1(a), (e)(2) and that no combination of conditions can mitigate either that safety risk or the risk of his willful flight. (*id.* § 110-6.1(a), (e)(3). I disagree with the majority that that burden was met here.

¶ 27      As an initial matter, nothing in Mr. Holloman's background suggests that he is a flight risk. To the contrary, he has deep ties to the community, no record of failing to appear, a history of cooperation with the police in this case, and both a teenage son and an elderly father whom he helps to care for.

¶ 28      Nor do I find that the State has proven Mr. Holloman poses a present threat to anyone's safety. The State and the majority focus almost exclusively on the predatory nature of the charged offense. However, that crime was alleged to have occurred over seven years ago. I have reviewed the record for any explanation of the State's failure to charge Mr. Holloman sooner. The only explanation given for the extensive delay was that the police decided to bring charges after performing a "forensic examination" on Mr. Holloman's phone. An examination of Mr. Holloman's phone may indeed have produced relevant evidence, but that does not explain why it took seven years to conduct that examination, time during which Mr. Holloman was in the community and was not facing any charges.

¶ 29      Mr. Holloman may have presented a threat to the victim when she was a minor living in the same home as him, but the passage of time has mitigated that threat. She is an adult now living elsewhere, and the absence of any criminal activity in the intervening seven years suggests his conduct may have been a crime of opportunity. The State presented no evidence that, if granted pretrial release, Mr. Holloman is likely to have similar prolonged contact with some other underage female in his own home or that he is a present danger to any underage female he may otherwise happen to encounter. Any remaining threat that this defendant, after seven years with no criminal activity, still poses to the victim in this case or to any other person could certainly be addressed by electronic monitoring, GPS monitoring, no-contact orders, or curfews, conditions that the majority has dismissed out of hand with no real consideration.

¶ 30    In short, the claim that Mr. Holloman poses a significant risk to the victim or to others is undermined by the State's inexplicably lengthy delay in charging him—seven years during which the teenaged victim became an adult and there was no evidence that Mr. Holloman had any contact with her or engaged in any other criminal activity. I would reverse the order of pretrial detention.