NOTICE
This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2025 IL App (4th) 241441-U

NO. 4-24-1441

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
February 10, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Livingston County |
| CHARLES M. SMITH, | ) | No. 24CF276 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Jennifer H. Bauknecht, |
| | ) | Judge Presiding. |

JUSTICE DOHERTY delivered the judgment of the court.
Justices Vancil and Cavanagh concurred in the judgment.

**ORDER**

¶ 1    *Held*: The trial court erred in finding that defendant posed a real and present threat to a person or the community and in ordering him to be detained.

¶ 2    Defendant Charles M. Smith is charged with four counts of predatory criminal sexual assault of two different children who were under the age of 13 when these offenses allegedly occurred between 26 and 33 years ago. Though he presently stands clothed with the presumption of innocence in the eyes of the law, if defendant is ultimately found guilty of these detestable offenses he would be subject to the severe sentences the law provides. But the question before the trial court, and now before this court, is not defendant's guilt or his punishment; it is whether the State adequately demonstrated that defendant *currently* presents such a danger that he should be detained in jail pending his trial. For the reasons stated below, we find that the State has failed to

prove this proposition, so we reverse the decision of the trial court.

¶ 3                                    I. BACKGROUND

¶ 4            On October 9, 2024, the State charged defendant by information with four counts

of predatory criminal sexual assault (720 ILCS 5/11-1.40(a)(1) (West 2022)), all Class X felonies.

Count I charged that, on or about the years 1992 through 1994, defendant committed an act of

sexual penetration with E.K., a minor, by placing his penis in her mouth for sexual gratification.

Count II alleged that, during the years 1993 through 1999, defendant committed an act of sexual

penetration with E.K. by placing his penis in her vagina for sexual gratification. Counts III and IV

alleged that, during the years 1993 through 1999, defendant committed similar acts against S.E.,

also a minor, specifically, sexual penetration by placing his penis in her vagina for sexual

gratification (count III) and sexual penetration by placing his finger in her vagina for sexual

gratification (count IV).

¶ 5                                    A. Petition to Detain

¶ 6            The State filed a verified petition to detain defendant pending trial, arguing that he

posed a real and present threat to the safety of any person or persons or the community and that no

condition or combination of conditions could mitigate the threat. The petition did not assert that

defendant posed a serious risk of not appearing in court or of flight.

¶ 7                                    B. Detention Hearing

¶ 8            The matter initially proceeded to a probable cause hearing. The State proffered that

the evidence would show that defendant sexually abused two minors, E.K. and S.E., during the

period of 1992 through 1999, when the minors were at their grandmother's house, where defendant

also resided. These incidents involved sexual penetration of the minors' vagina and mouth by

defendant's penis and fingers and an incident where defendant had his dog lick the vagina of S.E.

¶ 9        The trial court found the existence of probable cause and proceeded to conduct a hearing on the State's petition to detain. At the outset, the State tendered a pretrial investigation report prepared by an officer of the Office of Statewide Pretrial Services (OSPS), and it was received without objection. Included in the report was defendant's score on the Virginia Pretrial Risk Assessment Instrument-Revised (VPRAI-R), which declares that it is "not intended to interfere with judicial decision making but rather to offer information about how other defendants who scored similarly succeeded while on pretrial release." Defendant's VPRAI-R score was 2 out of a possible 14 points, which put him in Level 1, the lowest risk level for possible violations of the conditions of pretrial release. The report noted that the average failure rate for persons in Level 1 was 6.1%, which includes technical violations of pretrial release conditions. The report also noted that defendant lived alone at his current address.

¶ 10       The State then proffered that a police detective had interviewed the mother of the two victims, Lori B., and she denied any participation in or knowledge of the abuse. She confirmed that the family resided at the address provided by the minors, that the girls would "go to stay at the grandmother's house on weekends and be there overnight on the weekends," that defendant resided with the grandmother, and that he had a dog when the children were younger. She also confirmed that S.E. did not like to go to her grandmother's house when she was younger. The State further proffered that the victims decided to report these incidents now because defendant had unspecified "access" to minor children, "that being grandchildren or other children in the family, and that was a concern of theirs."

¶ 11       Regarding OSPS, the State proffered that it has "two Pretrial Services officers that do monitor defendants if they are released on Pretrial Services. I think they usually, the amount of clients that they monitor range[s] somewhere between 70 to a hundred clients with regular

intakes." It continued, "In regards to their abilities, they do meet with clients on whatever the court-specified basis is, whether that's weekly, biweekly or monthly. They can meet with them in person at their office, but also over phone or via telephone."

¶ 12    The State proffered that OSPS' preference "is for meeting in person. If *** this defendant were released and placed on reporting, if he failed to make an appointment, they would call text or e-mail and then send a letter to the address on file with a new appointment date." If defendant missed several appointments in a row, OSPS "would then notify the Court of that." According to the State:

> "When, GPS monitoring is available through OSPS; it gives a location of where the individual is. It does allow for up to 48 hours of free time, but that's entirely up to the Court whether or not the Court allows that movement or free time. It is viewed in real time and violations are sent to OSPS at that point."

The State further asserted, that, "[i]n regards to phone, Internet or social media surveillance," there was "no electronic surveillance other than GPS or SCRAM that is available through OSPS" to allow them to undertake phone, Internet, or other social media surveillance. It continued, "They have no ability to monitor what people are doing online or on, say like a cell phone or anything electronic of that nature; it would depend solely on self-reporting."

¶ 13    The proffer from defendant's counsel denied all allegations and stated that defendant "would agree to abide by pretrial conditions including reporting, monitoring and testing by OSPS. OSPS can monitor social media and other electronic media." Defendant further asserted that:

> "OSPS can employ GPS monitoring to determine whether a defendant is in a certain area, or a certain protected area, including schools, churches and prohibited areas.

- 4 -

OSPS can monitor to a greater extent than what the [VPRAI-R] score would designate per OSPS guidelines, basically that the Court could order more extensive monitoring, checking in, things of that nature."

¶ 14　Following the proffers and arguments of counsel, the trial court orally ruled that defendant posed a threat to persons or the community and that no conditions existed that could mitigate the threat. Concerning the perceived threat, the court stated:

"Here, the defendant certainly would pose a threat to the two victims in this case. Although I recognize that the allegations are some, from some time ago, but, also, they are not the only potential victims of this defendant. He does have access to other family members with young, small children, there are people in the community. I am also concerned about the videoing and the photography or the pictures that were taken. So, I think that this defendant poses, not only a threat of harm to the two victims here, but also to any other minor female children in particular that he may come into contact with including those that may be family members, but also that he may have access to through other means, neighbors, through his employment, friends, ***

* * *

*** access to a number of different minor children through, just through living in the community, through his own family as was noted by the individuals affected. I recognize that this defendant has denied the allegations. And given his age, he was in a superior position to these minor children and would also be in a superior position to these minor children; that is a concern."

¶ 15　Although acknowledging that defendant scored low on the VPRAI-R, the trial court

explained:

"I am concerned that [OSPS] would not be able to effectively monitor this defendant's activities. [OSPS] does not do home visits or unannounced visits. They really have no way to monitor or confirm any restrictions that this Court could place on the defendant such as no social media, which is an issue given the fact that there are allegations of videos and pictures taken; they would not be able to monitor social media. They wouldn't be able to confirm who is living with the defendant, who has access to the defendant, who the defendant is communicating with through the Internet or other social media sites, would not be able to confirm whether this defendant is living near a school, for example, a church. Further, everything that [OSPS] gathers is based upon self-reporting; and in this case, even the minimum information that was provided in connection with the pretrial report was not able to be verified because this defendant could provide nobody or no number to verify the information. So, self-reporting is very limited. Self-reporting is really just a poor way to enforce somebody's conduct, I guess; and that's what [OSPS] is limited in doing.

Furthermore, if there is some type of a violation, [OSPS] would not have any ability to immediately address any type of violation. Their ability to, they have no ability to enforce anything. If there's a violation, they bring that to the State's attention who then needs to prepare documentation and then bring it to the Court's attention; all the while this defendant is out and about. These charges are very, very serious and involve a natural-life sentence should the defendant be found guilty; and I think, based upon that, there is a heightened risk of this defendant fleeing.

- 6 -

Certainly recognize that he's been in the community for a long time, recognize that he has family in this community; but when you're facing that type of a sentence, it would not be unusual for somebody to flee the jurisdiction of this Court in order to not be held accountable.

And, in addition, while I understand that [OSPS] has the ability to place this defendant on some kind of GPS, electronic monitoring or home confinement, that would not prevent this defendant from engaging in any conduct that this Court would order he not do, such as communicate with minor children, communicate with the victims in this case, communicate with the other witnesses who have been identified or other parties to this egregious conduct. Moreover, electronic monitoring only tells me where this defendant is, not what he is doing or who he is doing it with; and, again, a violation would not cause any immediate action, things would take time for this defendant to report, or for this defendant's violation to ultimately be reported to the Court."

¶ 16    Finally, the court added that:

"[I]t's quite alarming that, given the serious nature of the charges and the heightened risk for flight, should this defendant fail to report, even if I order weekly reporting, should this defendant fail to report, it would take several weeks for that to rise to the level where [OSPS] would bring it to this Court's attention; and by then, he could be long gone."

¶ 17    The trial court entered a written detention order corresponding to its ruling, finding defendant posed "a real and significant danger to the community and/or one or more specifically identifiable persons" and that he was "unlikely to appear voluntarily/reliably for court

proceedings." The court further stated that less restrictive conditions would be ineffective because "[c]ommunity/individual safety cannot be meaningfully achieved with available conditions of pretrial release," and because there was "a high likelihood Defendant would not voluntarily/reliably appear in court if not incarcerated until trial."

¶ 18 Defendant filed a timely Illinois Supreme Court Rule 604(h)(2) (eff. Apr. 15, 2024) motion for relief, arguing the State failed to prove he posed a real and present threat, and further, that less restrictive conditions were available. The motion was denied November 6, 2024.

¶ 19 This appeal followed.

¶ 20 II. ANALYSIS

¶ 21 Defendant argues the trial court erred by detaining him because the State failed to show by clear and convincing evidence that he posed a real and present threat to the safety of any person or to the community and that no set of conditions could mitigate or lessen any such threat.

¶ 22 Section 110-2(a) of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/1102(a) (West 2022)), hereinafter as amended by Public Act 101-652, § 10-255 (eff. Jan. 1, 2023), commonly known as the Pretrial Fairness Act (Act) (see Pub. Act 102-1104, § 70 (eff. Jan. 1, 2023) (amending various provisions of the Act); *Rowe v. Raoul*, 2023 IL 129248, ¶ 52 (setting the Act's effective date as September 18, 2023)), provides that all criminal defendants are presumed eligible for pretrial release, subject to certain conditions. This presumption is applicable to all detainable offenses, including the one with which defendant is charged. The State may petition for pretrial detention if (1) a defendant is charged with a detainable offense as enumerated in the Code; (2) the defendant's release would pose "a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case," or the defendant "has a high likelihood of willful flight to avoid prosecution"; and (3) "no condition or

combination of conditions" can mitigate the threat or likelihood of flight. *Id.* §§ 110-6.1(a)(8), (e)(1)-(3). The State has the burden to prove by clear and convincing evidence that any condition of pretrial release is necessary. *Id.* § 110-2(b).

¶ 23 Under the recent Supreme Court decision in *People v. Morgan*, 2025 IL 130626, ¶ 54, when the parties to a pretrial detention hearing proceed solely by proffer, as here, "the reviewing court is not bound by the circuit court's factual findings and may therefore conduct its own independent *de novo* review of the proffered evidence and evidence otherwise documentary in nature." Under the *de novo* standard, a reviewing court performs the same analysis that the trial court would perform. *People v. McDonald*, 2016 IL 118882, ¶ 32.

¶ 24                                A. Present and Real Threat

¶ 25 Defendant initially argues that the State failed to establish by clear and convincing evidence that he presented a real and present threat to a person or the community. According to section 110-6.1(g) of the Code, the factors a trial court may consider in determining whether a defendant poses a real and present threat include:

> "(1) The nature and circumstances of any offense charged, including whether the offense is a crime of violence, involving a weapon, or a sex offense.
>
> (2) The history and characteristics of the defendant including:
>
> > (A) Any evidence of the defendant's prior criminal history indicative of violent, abusive or assaultive behavior, or lack of such behavior. ***
> >
> > (B) Any evidence of the defendant's psychological, psychiatric or other similar social history which tends to indicate a violent, abusive, or assaultive nature, or lack of any such history.

- 9 -

(3) The identity of any person or persons to whose safety the defendant is believed to pose a threat, and the nature of the threat.

(4) Any statements made by, or attributed to the defendant, together with the circumstances surrounding them.

(5) The age and physical condition of the defendant.

(6) The age and physical condition of any victim or complaining witness.

(7) Whether the defendant is known to possess or have access to any weapon or weapons.

(8) Whether, at the time of the current offense or any other offense or arrest, the defendant was on probation, parole, aftercare release, mandatory supervised release or other release ***.

(9) Any other factors *** deemed by the court to have a reasonable bearing upon the defendant's propensity or reputation for violent, abusive, or assaultive behavior, or lack of such behavior." 725 ILCS 5/110-6.1(g) (West 2022).

Any decision under section 110-6.1, including the dangerousness determination, "must be individualized, and no single factor or standard may be used exclusively to order detention." *Id.* § 110-6.1(f)(7).

¶ 26 In finding that defendant posed a threat, the trial court referenced the nature and circumstances of the charges against defendant and the proffered testimony that defendant continued to have access to children. Specifically, the court explained, "He does have access to other family members with young, small children, there are people in the community. I am also concerned about the videoing and the photography or the pictures that were taken." It then concluded:

"I think that this defendant poses, not only a threat of harm to the two victims here, but also to any other minor female children in particular that he may come into contact with including those that may be family members, but also that he may have access to through other means, neighbors, through his employment, friends, ***

* * *

*** access to a number of different minor children through, just through living in the community, through his own family as was noted by the individuals affected. I recognize that this defendant has denied the allegations. And given his age, he was in a superior position to these minor children and would also be in a superior position to these minor children; that is a concern."

¶ 27    The trial court did not articulate how defendant might pose a "real and present threat" to the two complaining witnesses in this case; both are now adults, and one lives out of state.

¶ 28    With respect to minor children "that may be family members," the record gives almost no information about who such family members are, their ages, where they live, or the opportunities defendant may have for contact with them. The record shows that defendant lives alone.

¶ 29    Furthermore, when the trial court stated a concern that defendant might pose a threat to other minors he "may have access to through other means, neighbors, through his employment, friends," or "just through living in the community," this broad statement is so universally true that, if sufficient, it would stand as a reason for the detention of any person charged with the offenses with which defendant is charged. We have cautioned that detentions must be

"individualized" and that "the fact that a person is charged with a detainable offense is not enough to order detention." *People v. Atterberry*, 2023 IL App (4th) 231028, ¶ 18.

¶ 30      Making an individualized assessment of any risk posed by the defendant leads us to the most salient factor here, and one the trial court never addressed: defendant's entire criminal record consists of a single misdemeanor which occurred nearly 30 years prior to the charges in this case, which themselves are alleged to have occurred more than 25 years ago. We must not overlook that the question here is whether "defendant's pretrial release poses a real and *present* threat to the safety of any person or persons or the community, based on the specific articulable facts of the case." (Emphasis added.). 725 ILCS 5/110-6.1(a)(1.5) (West 2022). "A court's finding with respect to a defendant's dangerousness is "a prediction of future criminal conduct." *Schall v. Martin*, 467 U.S. 253, 279 (1984). It is far easier to conclude that a defendant is unlikely to reoffend in the months or even years prior to trial when there is no record of the defendant having committed *any* offense in nearly three decades and where the alleged offenses at issue occurred more than 25 years ago.

¶ 31      Defendant's record shows the commission of a single misdemeanor nearly 30 years ago, and the charges at issue are alleged to have occurred more than 25 years ago. The risk assessment tool evaluated defendant as being at the lowest risk level for violating conditions of release. We find that the State failed to prove by clear and convincing evidence that defendant "poses a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts" of this case. 725 ILCS 5/110-6.1(a)(1.5) (West 2022).

¶ 32                    B. Mitigation/Conditions of Release

¶ 33      Section 6.1(e)(2)-(3) of the Code requires a court to find not only that the defendant subject to a detention petition "poses a real and present threat to the safety of any person or persons

or the community" but that "no condition or combination of conditions" can mitigate that threat. *Id.* § 110-6.1(e)(2)-(3). Although listed as separate findings in the statute, the two issues are inseparable. "[D]angerousness and conditions of release are two sides of the same coin; the nature and severity of the threat necessarily determine the nature and severity of the conditions that could—or could not—mitigate the threat." *People v. Romine*, 2024 IL App (4th) 240321, ¶ 16.

¶ 34        Here, we have found that the State failed to show by clear and convincing evidence that defendant presented a threat, and it is equally true that it has failed to show that there are no conditions of release which would appropriately mitigate any issues in this regard. While this requires reversal of the order for defendant's detention, on remand, the trial court has authority to set appropriate conditions of release. 725 ILCS 5/110-10 (West 2022).

¶ 35                                    C. Willful Flight

¶ 36        In addition to dangerousness, the Code allows detention of a defendant charged with particular offenses if the State shows that the defendant presents "a high likelihood of willful flight to avoid prosecution." *Id.* § 110-6.1(a)(8). Here, however, the State did not petition to detain defendant on the basis of the risk of his willful flight. Likewise, the trial court's written order does not state this as a basis for defendant's detention. In discussing the adequacy of conditions to guard against any threat defendant might pose, however, the court stated that "the serious nature of the charges" suggested that defendant had a "heightened risk for flight."

¶ 37        Clearly, it would be inappropriate to ground a detention decision on a basis not advanced by the State. The relevant discussion with respect to conditions of release is whether they guard against any threat posed by defendant, matters we have already dispensed with above. The court's offhand reference to "willful flight" does not constitute a separate basis to justify detention.

¶ 38                               III. CONCLUSION

¶ 39          The offenses at issue here are alleged to have occurred long ago but that does not prevent defendant's prosecution on those charges or, if convicted, his punishment; these issues will ultimately be resolved at trial. The question here, however, is whether defendant will be detained while he awaits that trial, and we are now governed by a comprehensive legislative scheme for answering that question. To overcome the presumption that defendant is entitled to his pretrial release, the State must prove by clear and convincing evidence that he poses a *present* threat to others, and it has failed by a wide margin to make its case.

¶ 40          For the reasons stated, we reverse the trial court's judgment and remand for a determination of appropriate conditions of release as contemplated by subsection 110-10(b) (725 ILCS 5/110-10(b) (West 2022)).

¶ 41          Reversed and remanded.