NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2025 IL App (4th) 250488-U

NO. 4-25-0488

IN THE APPELLATE COURT

FILED
August 12, 2025
Carla Bender
4th District Appellate
Court, IL

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | McLean County |
| STEVE ADMA, | ) | No. 25CF22 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | J. Jason Chambers, |
| | ) | Judge Presiding. |

JUSTICE CAVANAGH delivered the judgment of the court.
Justices Doherty and Grischow concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The appellate court reversed, finding the trial court erred when finding defendant
posed a real and present threat to the safety of any person or persons or the
community based on the specific articulable facts of the case.

¶ 2         Defendant, Steve Adma, appeals the trial court's order denying his motion for relief

from pretrial detention pursuant to the Code of Criminal Procedure of 1963 (Code) (725 ILCS

5/110 *et seq.*) (West 2024)). On appeal, defendant argues the trial court erred when finding he

posed a threat to the community and no conditions of pretrial release would mitigate any threat

he posed. We reverse.

¶ 3                                I. BACKGROUND

¶ 4         In January 2025, defendant was charged by information with traveling to meet a

child (720 ILCS 5/11-26(a) (West 2024) (count I); two counts of indecent solicitation of a child

(*id.* § 11-6(a), (a-5)) (counts II and III); solicitation to meet a child (*id.* § 11-6.6(a)) (count IV);

and grooming (*id.* § 11-25(a)) (count V). He was subsequently indicted on said counts by a grand jury. The State filed a petition to deny defendant's pretrial release.

¶ 5 The State proffered a probable cause statement, alleging the Illinois State Police conducted an operation wherein an undercover officer posted an online advertisement for sexual services. The advertisement depicted a "young-looking female who was displaying herself in a sexual manner." The advertisement stated the female was 19 years old and listed a phone number to contact the undercover officer. Defendant initiated contact with the officer via a text message on January 8, 2025, asking "how much money for sex?" Defendant sent a follow-up text, stating, "I need 15 or $100." The officer agreed to the rate defendant offered and confirmed the payment would be in cash. The officer sent defendant a text stating, "[Y]ou have to wear a condom because I'm 16 and don't want to catch anything." Defendant confirmed he would wear a condom. Defendant and the officer agreed to meet at a hotel. The officer texted defendant, asking his age, to which defendant stated he was 22 years old. The officer texted defendant that he could not record video of her because she was only 16 years old. Defendant replied, "okay." Defendant arrived at the hotel and went to the room number provided by the officer. The officer, again, told defendant she was 16 years old. Defendant gave the officer $200, and he was subsequently arrested. Following his arrest, defendant admitted he knew the officer said she was 16 years old.

¶ 6 The trial court found probable cause, and the matter proceeded to a hearing on the State's petition to deny defendant's pretrial release. The court took judicial notice of the State's probable cause statement and the pretrial services investigation report. The report showed defendant immigrated to the United States in October 2023 and only speaks Haitian Creole. Defendant lived in Indiana until he moved to Galesburg, Illinois, two weeks prior to his arrest. He worked full-time in Monmouth, Illinois. On the Virginia Pretrial Risk Assessment

Instrument-Revised (VPRAI-R), defendant scored a 2 out of 14, or a "Level 1," the lowest level of "failure rate" for pretrial release. His only two points on the VPRAI-R came from his pending traffic citations out of Knox County.

¶ 7        A McLean County pretrial services field supervisor, Nate Kessinger, testified his office provides electronic home monitoring services. He stated electronic monitoring can only exclude specific zones, such as schools or day cares, if the addresses are known in advance. He said electronic monitoring could not detect if a defendant was communicating with a minor and pretrial services does not have "phone monitoring and phone extraction services." He confirmed pretrial services could not monitor an individual's "social media, internet browsing history or phone calls." He stated pretrial services did not have "protocols in place for home visits" and confirmed that if an individual were to visit a defendant who was under electronic monitoring, the system would not alert pretrial services to that visitor.

¶ 8        Defendant, by way of proffer, stated he was 21 years old and relocated to the United States from Haiti to find employment and send money back to his family in Haiti. He scored a 2 out of 14 on the VPRAI-R and only had two pending traffic matters from a citation he received on January 2, 2025. He noted the allegations against him alone have "caused a great pressure" and "disgrace." He noted his compliance with the police following his arrest and that he was open to any pretrial release conditions the trial court deemed necessary.

¶ 9        The trial court found the State had proved by clear and convincing evidence the proof was evident and presumption great defendant had committed a detainable offense by traveling to meet a child. The court stated the offense did not involve a weapon and that while it was a sex offense, it did "not believe it classifie[d] as a crime of violence under these facts." The court noted defendant's age and that he was employed, only had pending traffic citations, and

had scored a 2 out of 14 on the VPRAI-R. The court stated it did not find any indication from defendant's criminal background or psychological indicators he had a tendency for violent, abusive, or assaultive behavior. The court found there was no specific individual defendant posed a danger to but did find the State had proven he was a danger to the community, "specifically those under the age of 18." However, the court found the State had not proven there were no conditions of pretrial release that could mitigate any danger defendant posed. The court denied the State's petition and granted defendant pretrial release. The conditions of pretrial release for defendant included he have no contact with individuals under the age of 18, appear in court as required, not violate any law of any jurisdiction, update any change of address within 24 hours, and comply with pretrial services.

¶ 10 On February 11, 2025, the State filed a motion for relief pursuant to Illinois Supreme Court Rule 604(h) (eff. Apr. 15, 2024). The motion argued the trial court failed to consider defendant's traffic violations, which demonstrated his inability to comply with the law, and pretrial services' inability to properly monitor his behaviors while on pretrial release when determining no conditions of pretrial release would mitigate any danger defendant posed to the community. A hearing on the State's motion was set for March 3, 2025.

¶ 11 On March 3, defendant failed to appear. Counsel for defendant indicated defendant no longer had a cell phone because it had been seized as evidence for this case. He also no longer had transportation because his vehicle had been seized. Defendant had communicated to counsel that he could appear in court later that same week. The trial court issued a warrant for defendant's arrest.

¶ 12 On May 2, 2025, the parties appeared before the trial court after defendant had been arrested in Indiana. The State filed a motion for sanctions *instanter*, requesting defendant

serve six days in jail for his failure to appear. The court ordered defendant to be sanctioned for his failure to appear on March 3 by serving 14 days in the McLean County jail.

¶ 13 On May 5, 2025, a hearing on the State's motion for relief was held. The trial court found the State had proven no conditions of pretrial release could mitigate the real and present threat defendant posed to the safety of the community. The court explained:

"So I am going to also mention I'm only considering the failure to appear as to [conditions of pretrial release], and I recognize that at a [Rule] 604 hearing it may be that I'm not supposed to be considering something new, but I'm putting it in the record so in case it is something defense counsel wants to argue.

But we had a failure to appear on March 3rd of this year, and [defendant] didn't get picked up until well into April and also where he got picked up was between here and there. He made it to Indiana but couldn't make it to McLean County.

So I'm not considering that as to whether or not he's a threat but as to whether or not he could comply with pretrial release conditions."

¶ 14 The trial court granted the State's motion and denied defendant pretrial release.

¶ 15 Defendant filed a motion for relief *instanter*. His motion argued the trial court failed to make an individualized risk assessment regarding any danger to the community defendant posed and cited *People v. Smith*, 2025 IL App (4th) 241441-U, in support. The court took a brief recess to review defendant's motion. The court stated it was not denying defendant pretrial release based on the allegations of the charged offenses alone. The court stated it was considering the specific, articulable facts of the case and denied defendant's motion.

¶ 16 This appeal followed.

¶ 17                                    II. ANALYSIS

¶ 18          On appeal, defendant argues the trial court erred when denying his pretrial release because the State had failed to show (1) he posed a threat to the community and (2) no conditions of pretrial release would mitigate any threats he posed.

¶ 19          Under the Code, it is presumed all criminal defendants are entitled to pretrial release, subject to certain conditions. 725 ILCS 5/110-2(a) (West 2024). The Code requires the State to prove by clear and convincing evidence "the defendant poses a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case," and "no condition or combination of conditions set forth in subsection (b) of Section 110-10 of this Article can mitigate (i) the real and present threat to the safety of any person or persons or the community." *Id.* § 110-6.1(e)(2), (3)(i). Additionally, section 110-6.1(g) requires the trial court to consider "the specific articulable facts of the case" and provides nine factors the court can also consider when assessing the real and present threat allegation. *Id.* § 110-6.1(g). The factors a court may consider when determining whether a defendant poses a real and present threat include:

> "(1) The nature and circumstances of any offense charged, including whether the offense is a crime of violence, involving a weapon, or a sex offense.
>
> (2) The history and characteristics of the defendant including:
>
> > (A) Any evidence of the defendant's prior criminal history indicative of violent, abusive or assaultive behavior, or lack of such behavior. ***

- 6 -

(B) Any evidence of the defendant's psychological, psychiatric or other similar social history which tends to indicate a violent, abusive, or assaultive nature, or lack of any such history.

(3) The identity of any person or persons to whose safety the defendant is believed to pose a threat, and the nature of the threat.

(4) Any statements made by, or attributed to the defendant, together with the circumstances surrounding them.

(5) The age and physical condition of the defendant.

(6) The age and physical condition of any victim or complaining witness.

(7) Whether the defendant is known to possess or have access to any weapon or weapons.

(8) Whether, at the time of the current offense or any other offense or arrest, the defendant was on probation, parole, aftercare release, mandatory supervised release or other release \*\*\*.

(9) Any other factors \*\*\* deemed by the court to have a reasonable bearing upon the defendant's propensity or reputation for violent, abusive, or assaultive behavior, or lack of such behavior." *Id.*

¶ 20    When the trial court, presiding over a detention hearing, is presented with live witness testimony, we review the court's decision under the manifest weight of the evidence standard. *People v. Morgan*, 2025 IL 130626, ¶ 54. When the parties proceed solely by proffer at the detention hearing, we review the court's decision *de novo*. *Id.* For the reasons that follow, we find the court's decision was unsupported by the evidence, and, thus, against the manifest weight of the evidence.

¶ 21      In finding defendant posed a real and present threat, the trial court concluded defendant posed a threat to the community at large, "specifically those under the age of 18." Under the Code, this is simply not enough. As we noted in *Smith*, such a "broad statement is so universally true that, if sufficient, it would stand as a reason for the detention of any person charged with the [sex offenses involving children] with which defendant is charged." *Smith*, 2025 IL App (4th) 241441-U, ¶ 29. The Code requires a dangerousness determination to "be individualized, and no single factor or standard may be used exclusively to order detention." 725 ILCS 5/110-6.1(f)(7) (West 2024). Not only must the court's detention decision be individualized, "the fact that a person is charged with a detainable offense is not enough to order detention." *People v. Atterberry*, 2023 IL App (4th) 231028, ¶ 18.

¶ 22      The evidence showed defendant had no prior criminal history, other than two pending traffic violations. We agree with the trial court and also find there was no evidence presented suggesting he had a propensity for violent, abusive, or assaultive behavior. Defendant's VPRAI-R score wasat the lowest risk level for violating conditions of pretrial release. Lastly, there was no specific, individualized evidence showing defendant posed a threat, let alone the nature of the threat he posed, to the community. This case is strikingly similar to *People v. Farah*, 2025 IL App (4th) 250322-U, ¶ 42, where we also noted "the Code makes clear that persons charged with [serious offenses nearly identical to defendant in this case] are *presumed* to be eligible for pretrial release." (Emphasis in original.) "The question presented is why *this defendant*, on the facts of *this case*, has been shown by clear and convincing evidence to fall outside of the normal presumption." (Emphases in original.) *Id.* Pursuant to the factors from section 110-6.1(g) of the Code, we find the court erred when determining defendant posed

a real and present threat to the safety of any person or persons or the community based on the specific articulable facts of this case. 725 ILCS 5/110-6.1(g) (West 2024).

¶ 23                              III. CONCLUSION

¶ 24         For the reasons stated, we reverse the trial court's judgment and remand for a determination of the appropriate conditions of release, as contemplated by subsection 110-10(b) (*id.* § 11-10(b)).

¶ 25         Reversed and remanded.