NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2025 IL App (4th) 250913-U

NO. 4-25-0913

IN THE APPELLATE COURT

FILED
December 4, 2025
Carla Bender
4th District Appellate
Court, IL

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Livingston County |
| JACOB D. McCORKLE, | ) | No. 25CF189 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Jennifer Hartmann |
| | ) | Bauknecht, |
| | ) | Judge Presiding. |

JUSTICE KNECHT delivered the judgment of the court.
Presiding Justice Harris and Justice Vancil concurred in the judgment.

**ORDER**

¶ 1   *Held*: The circuit court did not err in finding defendant posed a real and present threat to a person or the community that could not be reasonably mitigated by conditions and in ordering him detained.

¶ 2   Defendant, Jacob D. McCorkle, appeals the circuit court's order denying his pretrial release under section 110-6.1(a) of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/110-6.1(a) (West 2024)). Defendant contends the State failed to prove by clear and convincing evidence he posed an unmitigable threat to the safety of a person or the community. We affirm.

¶ 3   I. BACKGROUND

¶ 4   On July 28, 2025, defendant was charged with traveling to meet a child (720 ILCS 5/11-26(a) (West 2024)) and indecent solicitation of a child (*id.* § 11-6(c)(3)).

¶ 5        That same day, the State filed a verified petition to deny defendant pretrial release under section 110-6.1(a)(5) of the Code (725 ILCS 5/110-6.1(a)(5) (West 2024)) under the dangerousness standard. The State alleged defendant committed a sexual offense and posed a real and present threat to the safety of any person or persons or the community.

¶ 6        At the hearing on the State's petition, the State proffered the following:

"Detective Rafferty of the Fairbury Police Department operates a fictitious Facebook page that portrays a young-looking female. This particular page goes by the name of Hannah. On July 28th, 2025, Hannah received a message from an account named, Jacob McCorkle. The first message was received from Jacob at approximately 12:20 in the morning of July 28th. Jacob inquired if Hannah wanted to smoke bud, commonly a reference for marijuana. Hannah advised that she was only 14 years of age. Jacob advised that her age was not an issue and still wanted to hang out. She asked what they would do; and Jacob advised that he wanted to make her smile and maybe make her cum. Hannah inquired if girls cum, and he stated that they orgasm and that he would show her that. He advised that he was going to make love to her and make her feel good. He inquired about an address, and an address of 110 East Watson in Forrest was given to him. He advised that he was traveling from Bourbonnais and would take approximately 45 minutes. Hannah told Jacob that she had never had sex before, and Jacob advised that he would be a gentleman

and make it sexy and beautiful for her. She inquired if he was going to wear a condom and which he advised he would, but he preferred to not wear a condom. She then told him that he would have to pull out, and he stated he knew that. He advised that he was on his way, would be there in approximately 45 minutes.

Units staged in the area of 110 East Watson. After approximately 45 minutes, [defendant] was seen, driving a truck that was registered to him, there in Forrest. He parked across the street from 110 East Watson, exited the driver's side door of the vehicle. At that time, Detective Rafferty approached in his squad car activating his emergency lights. The defendant *** was placed in handcuffs. At that time, [defendant] advised that his brother was driving, and he began yelling a name. There was nobody else in the vehicle though, only this defendant. Officers could smell the strong odor of alcohol emitting from his breath. They searched his truck and located a tall-boy-style can of beer that was more than halfway empty. They also located a baggie of marijuana that had approximately 10 grams of what appeared to be marijuana in it and located a wallet on this defendant's person with a driver's license identifying him as Jacob McCorkle. They also located a cell phone on his person. Detective Rafferty made a phone call from Hannah's Facebook page to Jacob's Facebook page, and which the phone that was on this defendant's person began to ring while

receiving a phone call from Hannah."

¶ 7 The State also offered the pretrial investigation report (PSI) and a "Proffer Outline" from the Office of Statewide Pretrial Services (OSPS). According to the PSI, defendant was single. He had lived with his stepfamily for about two years. Defendant had two sons who lived with their mothers and a child on the way. Defendant had no contact with his 17-year-old son. He had visitation with his 11-year-old son. Defendant provided financially for both. Defendant was unable to drive due to a suspended license, but his brother verified he would get defendant to and from court as needed. Defendant's education is listed as "Att College." At the time of the report, defendant worked full-time with All Automotive of Kankakee County 6 to 7 days each week and 8 to 12 hours per day, "depending on what jobs he [was] sent to." Defendant had a history of drug abuse. Defendant reported no history of substance abuse, but his criminal history showed otherwise in reports from cases with controlled-substance charges.

¶ 8 The PSI provides defendant's criminal history, which began in 2001. According to this history, at the time of the offenses, defendant was on 24 months' court supervision for "[driving] under influence of drug" and on 12 months' conditional discharge for "unlawful use black-jack/knife" and driving on a suspended license. As of the date of the report, defendant had three pending charges for offenses from March 2025. In Kankakee County case No. 25-CF-188, defendant had been charged with "obstruct just[ice]/destroy evidence" and "DUI alc[ohol]/intox[ication] compound/drug." In Kankakee County case No. 25-MT-388, defendant was charged with "fleeing/attempt elude officer." In addition to those offenses, defendant's Illinois criminal history includes a 2022 "unlawful use black-jack/knife," a 2017 "ret[ail] theft/disp[lay] merch[andise]/<$300," a 2016 "poss[ession] [amount] con[trolled] sub[stance] except(A)/(D)," a 2015 "use forged cr[edit]/debit card/<$300," 2012 offenses of "[driving] under

influ[ence]/[breath alcohol content] 0.08" and "fail notify [damage]/unattended veh[icle]," a 2004 "possess[ion] cannabis/2.5-10 grams," a 2003 "driving on suspended license," a 2002 "battery/makes physical contact," and a 2001 burglary. Defendant's Texas criminal history includes convictions for a 2004 "theft/prop[erty] grave/human corpse," a 2005 "assault causes bodily injury family violence," and a 2006 "delivery of controlled substance." For the latter offense, defendant was sentenced to five years' imprisonment. Defendant scored a 7 out of 14 on the Virginia Pretrial Risk Assessment Instrument-Revised. The failure rate for a score of 7 is 21.4%.

¶ 9       According to OSPS's proffer outline, there are two pretrial service officers in Livingston County. The duties of these officers include preparing PSIs, supervising individuals on pretrial release, meeting regularly with defendants, attending court hearings, and submitting reports to the court when a defendant violates conditions of release. In Livingston County, OSPS has between 80 and 110 clients. When a defendant fails to make an appointment, OSPS attempts to contact that individual. If the defendant misses several consecutive appointments, OSPS will notify the court. As to "GPS Monitoring," the proffer states such monitoring "[g]ives exact location"; GPS is viewed in real time by the "[electronic monitoring] department" of OSPS. OSPS allows a defendant to spend 48 hours per week outside the home to attend "work/appointments/grocery/etc." at the court's discretion. The 48-hour period may be served in increments and requires preapproval. The electronic monitoring department "can communicate with defendant through [the] device" and "can notify law enforcement if boundaries are violated." The proffer provides substance-abuse monitoring options, such as a secure continuous remote alcohol monitor (SCRAM) device, which "is a transdermal device worn on the wrist" that provides "constant alcohol monitoring." Also offered are drug-screen mouth swabs, which are

"done in person," and the "frequency [is] dependent on release order or OSPS discretion." According to the proffer, there is no other electronic surveillance offered. There is no ability to monitor what a person is doing online. An officer with OSPS can go through a defendant's cell phone at appointments. Officers have no particularized training on electronic devices. OSPS officers do not conduct home visits due to concerns about officer safety. They also do not go to places of employment or visit counselors for defendants in treatment.

¶ 10        Defense counsel proffered defendant would abide by any pretrial conditions, including no contact with minors and GPS monitoring. Defense counsel highlighted defendant was working full-time and supporting his family and argued conditions could mitigate any risk he posed. Defense counsel further argued Hannah does not exist and thus a general risk to the community is the only risk of harm.

¶ 11        The circuit court found the State clearly and convincingly proved the requisite factors to deny pretrial release under the dangerousness standard. Defendant filed a motion for relief from judgment. Defense counsel argued conditions such as testing and staying away from children and schools, as well as defendant's agreement to abide by those conditions, would mitigate any real and present threat to the community. The court disagreed and denied defendant's motion.

¶ 12        This appeal followed.

¶ 13                                II. ANALYSIS

¶ 14        According to the Code, when the State, under the dangerousness standard, seeks to detain pretrial a defendant charged with an eligible offense (725 ILCS 5/110-6.1(a) (West 2024)), the State must prove by clear and convincing evidence (1) "the proof is evident or the presumption great that the defendant has committed" an offense described in section 110-6.1(a)

(*id.* § 110-6.1(e)(1)), (2) "the defendant poses a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case" (*id.* § 110-6.1(e)(2)), and (3) "no condition or combination of conditions *** can mitigate *** the real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case" (*id.* § 110-6.1(e)(3)(i)). As no live testimony was presented during the detention hearing, our review of defendant's detention order is *de novo. People v. Morgan*, 2025 IL 130626, ¶ 54.

¶ 15        On appeal, defendant does not argue the State failed to prove the proof is evident or presumption great he committed an eligible offense but contends the State did not adequately prove the second and third factors. Defendant contends the State failed to prove clearly and convincingly he poses an unmitigable threat to children. He argues the State did not proffer he had ever actually had sex with a child, had access to children through a position of trust or confidence, or had access to any actual children with whom he could have sex. Defendant maintains the State's proffer suggests only one obvious way for him to have sex with a child: find one on the Internet who was interested in having sex with him and going to that child's location or having the child come to him. Defendant concludes this is not a "real" threat as, with the imposition of conditions, if there are children similar to the fictional Hannah, those children must be located physically within defendant's reach for him to pose a threat to them. Otherwise, defendant argues, the State is left with the speculative possibility defendant may be able to find such a child, which is, he contends, insufficient to be a real and present threat within the meaning of the Code. See *People v. Smith*, 2025 IL App (4th) 241441-U, ¶ 29 (finding the broad statement a defendant may pose a threat to minors he may have access to simply by living in the community is "so universally true that, if sufficient, it would stand as a reason for the detention

of any person charged with the offenses with which defendant is charged").

¶ 16        We begin with the second factor of section 110-6.1(e)(2) to consider whether the State clearly and convincingly proved defendant presents a real and present threat to the community. See 725 ILCS 5/110-6.1(e)(2) (West 2024). Section 110-6.1(g) (*id.* § 110-6.1(g)) lists factors to be considered in determining whether a defendant poses a real and present threat to the safety of the community. These factors are as follows:

> "(1) The nature and circumstances of any offense charged, including whether the offense is a crime of violence, involving a weapon, or a sex offense.
>
> (2) The history and characteristics of the defendant including:
>
>> (A) Any evidence of the defendant's prior criminal history indicative of violent, abusive or assaultive behavior, or lack of such behavior. ***
>>
>> (B) Any evidence of the defendant's psychological, psychiatric or other similar social history which tends to indicate a violent, abusive, or assaultive nature, or lack of any such history.
>
> (3) The identity of any person or persons to whose safety the defendant is believed to pose a threat, and the nature of the threat.
>
> (4) Any statements made by, or attributed to the defendant, together with the circumstances surrounding them.

(5) The age and physical condition of the defendant.

(6) The age and physical condition of any victim or complaining witness.

(7) Whether the defendant is known to possess or have access to any weapon or weapons.

(8) Whether, at the time of the current offense or any other offense or arrest, the defendant was on probation, parole, aftercare release, mandatory supervised release or other release from custody pending trial ***.

(9) Any other factors *** deemed by the court to have a reasonable bearing upon the defendant's propensity or reputation for violent, abusive, or assaultive behavior, or lack of such behavior." *Id.*

¶ 17    Considering these factors as they apply to defendant, the State clearly and convincingly proved defendant poses a real and present threat to the community. While defendant frames his argument with the premise the State must prove there is a real and present threat he would commit a sex offense against a minor, the Code does not require proof the defendant may commit the same crime or the same type of crime as the one charged—only that the defendant's release poses a real and present threat to the community. While there is a general threat to minors with whom defendant may come into contact while on work assignments, over the Internet, or in the community (see generally *Smith*, 2025 IL App (4th) 241441-U, ¶ 29), the State's proffer establishes defendant also poses a specific, individualized, real, and present threat to the community.

¶ 18     Turning to the State's proffer, we begin with the first factor, the nature and circumstances of the offense (see 725 ILCS 5/110-6.1(g)(1) (West 2024)). Defendant did not simply drive 45 minutes in the middle of the night to have sex with a minor. Defendant did so while on a suspended license, consuming alcohol, and in possession of cannabis. We think it is noteworthy the proffer shows defendant offered to smoke a "bud" with Hannah. As to the second factor, defendant's criminal history (see *id.* § 110-6.1(g)(2)) spans 24 years. It includes recent charges of driving under the influence of drugs or alcohol and shows defendant's criminal activity is increasing. From 2001 to 2017, defendant had 12 convictions. Since 2022, defendant has been convicted of four offenses and faces charges for five additional offenses, including the two in this case. Although committed approximately two decades before, defendant has had convictions for violent offenses (see *id.* § 110-6.1(g)(2)(A)). Moreover, defendant's criminal record further raises grave concerns about his access to weapons (see *id.* § 110-6.1(g)(7)), which is another relevant statutory factor. When charged with the offenses at issue here, defendant was on conditional release for unlawful use of a jackknife. He was also, in 2022, convicted of the same offense. The other pertinent consideration is defendant was on conditional discharge and court supervision when the offenses were committed (*id.* § 110-6.1(g)(8)). Defendant committed the charged offenses despite having repeatedly been ordered not to commit new offenses while awaiting trial, on conditional discharge, and under court supervision.

¶ 19     Defendant contends even if the threat is significant enough to be real, that threat may be reasonably mitigated by conditions of release limiting defendant to his home and work, electronic monitoring, and setting an inclusion zone for the two statutory days permitting movement for shopping and necessary activities (see 730 ILCS 5/5-8A-4 (West 2024)). Defendant argues these conditions would reasonably mitigate the threat as, under such conditions

he agreed to abide by, "[f]or the threat to safety to actually culminate in a violation of safety, [defendant] would need to find, at least, a child online in the Bourbonnais-Bradley-Kankakee metropolitan area interested in sex with him, or a child somehow capable of travel for the purpose of sex."

¶ 20      While defendant states he will abide by the circuit court's conditions of pretrial release, his record undermines any such presupposition. His criminal history reveals a man unwilling to comply with the law and any conditions of release. He is willing to engage in sexual activity with a minor. In that context, the option of GPS monitoring will provide defendant's location and likely prevent him from driving but will not curtail his access to the Internet. One of the offenses for which defendant is charged, indecent solicitation of a child, does not require defendant to leave his residence or perform a sex act with the child. See 720 ILCS 5/11-6(a-5), (a-6) (West 2024). Nor will GPS monitoring curtail defendant's access to children in his home or at work. Defendant's employment is not in a fixed place. He travels to job sites. Defendant also has visitation with his 11-year-old son, which may also lead him to encounter other minors. We have no confidence an order for defendant to stay away from minors online or in person will be followed.

¶ 21      Defendant's real and present threat to be mitigated is not limited to his potential exposure to minors. Defendant's criminal history and the facts and circumstances of this case show he had repeatedly chosen to drive under the influence of alcohol or drugs. While the OSPS proffer reveals a SCRAM device will detect alcohol consumption, it further reveals there is no device to timely show defendant has not used drugs before driving. Defendant's failure to abide by the terms of his conditional discharge or court supervision and his driving while on a suspended license to meet Hannah give us no confidence defendant will not drive and certainly

not drive while under the influence of drugs.

¶ 22        The State clearly and convincingly proved no condition or combination of conditions can reasonably mitigate the real and present threat defendant poses to the community. The circuit court did not err in detaining him pretrial.

¶ 23                     III. CONCLUSION

¶ 24        We affirm the circuit court's judgment.

¶ 25        Affirmed.