NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2025 IL App (4th) 251082-U

NO. 4-25-1082

IN THE APPELLATE COURT

FILED
December 30, 2025
Carla Bender
4th District Appellate
Court, IL

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Peoria County |
| NAUSICCA THOMAS, | ) | No. 25CF58 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Stephen A. Kouri, |
| | ) | Judge Presiding. |

JUSTICE DOHERTY delivered the judgment of the court.
Justice Cavanagh concurred in the judgment.
Justice DeArmond dissented.

**ORDER**

¶ 1    *Held*:   The State failed to prove that any threat posed by defendant could not be mitigated by appropriate conditions, so its petition for her pretrial detention should have been denied.

¶ 2    Defendant Nausicca Thomas appeals from the circuit court's pretrial detention order entered pursuant to the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/110-1 *et seq.* (West 2024)). On appeal, defendant argues that the court erred in finding that she posed a threat to the community and that no condition or combination of conditions of pretrial release would mitigate any threat she posed.

¶ 3    We reverse and remand.

¶ 4                     I. BACKGROUND

¶ 5             A. Original Charges and Conditional Release

¶ 6        On January 13, 2025, defendant was charged by information with one count of aggravated battery (720 ILCS 5/12-3.05(b)(2), (h) (West 2024)), a Class 3 felony, for administering an excessive dose of ZzzQuil to H.W., a person under the age of 13 years for whom she was legally responsible. That same day, the State filed its petition to impose conditions of pretrial release, which was granted.

¶ 7        The written order setting conditions stated that, although defendant had been charged with a detainable offense, the State had not filed a petition to detain. The order imposed a number of conditions on defendant, including the following requirements: that she appear in court to answer the charges against her and submit to the orders and process of the court; that she not violate any criminal statutes of any jurisdiction; that she not leave Peoria County without permission and notify the court in writing within 24 hours after a change of address; that she report to pretrial services as directed; that she refrain from possessing a firearm or other dangerous weapon; and that she must agree to GPS monitoring.

¶ 8                    B. Indictment and New Charges

¶ 9        On February 25, 2025, defendant was indicted with first degree murder, in violation of section 9-1(a)(2) of the Criminal Code of 2012, a Class M felony (count 1) (*id.* § 9-1(a)(2)), and aggravated battery, in violation of section 12-3.05(b)(2), a Class 3 felony (count 2) (*id.* 12-3.05(b)(2), (h)). Count 1 alleged that defendant had "without legal justification knowingly administered an excessive dose of [ZzzQuil] to [H.W.] knowing said act crated a strong probability of death or great bodily harm to [H.W.], and thereby caused the death of [H.W.]" Count 2 was worded the same as in the information.

¶ 10        Concurrently with the indictment, the State filed a verified petition to deny defendant pretrial release, arguing as follows:

"The defendant is charged with a forcible felony offense as listed in 725 ILCS 5/110-6.1(a)(1.5) or any other felony which involves the threat of or infliction of great bodily harm or permanent disability or disfigurement and the defendant's pretrial release poses a real and present threat to the safety of any person or persons in the community."

¶ 11     A detention hearing was held on March 6, 2025, at which time the State made the following proffer of facts:

"[T]his incident initially came to light in December, December 19th of last year, when officers were contacted by the hospital when a child arrived who was 13 months old.

He was in acute respiratory distress. He was pale and dry. He was gravely ill, let's say, and during the course of the treatment, they discovered that he had broken ribs. He appeared very malnourished and dehydrated. He ultimately died, and during the course of the initial investigation, it was learned that he lived with this defendant and her girlfriend, who is his mother, Tasheaunna Williams.

The information that they initially had was that the child had been provided ZzzQuil because the child would not stop crying, and so the child had been provided this sleeping medication to try to help [him] sleep because [he] would not stop crying.

As a result of that investigation it was learned that this defendant provided the ZzzQuil to the child in adult dose quantities, but that was all we had at the time. And the mother of the child, Ms. Williams, was aware and observed her providing the medication to her child purportedly to make him sleep because he wouldn't stop

crying."

¶ 12 The State then proffered H.W.'s autopsy findings, which confirmed he suffered broken ribs and other injuries. According to the State, "after a toxicology [report] was received, it was learned that the child had been provided a dosage of ZzzQuil that was anywhere between three to five times an adult dose so a toxic, poisonous level of ZzzQuil." The State explained that ZzzQuil "is an over-the-counter medication which on the label says it's not to be given to a child under the age of 12." H.W. was 13 months old. The State stated that "[t]he autopsy results would show that the child was likely crying and fussing because he had the broken ribs and a lacerated spleen."

¶ 13 The State further proffered:

"As a result, further investigation was conducted. It was learned that when the child that the—that this defendant and the mother of the child had left the child alone in the home. This defendant had provided the ZzzQuil which she admits to the child, and then she and the mother left the child alone in the home for upwards of two hours.

When this defendant returned home, she found the child in grave condition at which time she called not 911, your Honor, but she called Poison Control and faked her own name, faked the child's condition and the child's name, and continued to ask them what to do if a child had possibly taken too much of this medication.

They insisted she take him to the hospital. They insisted a whole bunch of treatment, and she continued to lie and deceive about her name, at which time she—ultimately, the child did get taken to the hospital, but he died of a fatal overdose

provided to him by this defendant while his mother watched."

¶ 14 The State continued its proffer, stating:

"[T]his medication was never to be given to a child. Then these two women left this child alone after dosing him, clearly dosing him, and knowing that she poisoned him because she chose to call Poison Control versus calling for 911 and getting help there.

And so, for that reason, once we had the toxicology we had both of these women indicted with the first degree murder charges. We believe based upon the nature and circumstances of this incident, the fact that this was a young child in their care, there was obviously deliberate acts to provide this fatal substance to this child, failure to seek help [for] this child.

This child also had severe injuries that had been inflicted at some time prior to the fatal dose, and the injuries were purportedly the reason they gave him the fatal dose to try to get this poor 13-month-old child to stop crying when he had a lacerated spleen. Now they are facing charges that could put them in prison for up to 100 years.

We believe that, clearly, they are a danger. The safety of others is at danger. There's certainly a flight risk. They may have been on bracelet before for the last month, but now they're facing essentially the rest of their life in prison. So, we believe that creates a flight risk and a risk to others, and their—I mean, this defendant lied to authorities about the child but also lied about her own name.

We believe that it is a risk to release her and there are no conditions that would protect the public or assure her appearances, and we'd ask that you order she

remain detained pending trial."

¶ 15    In response, defense counsel stressed that defendant's corrected Virginia Pretrial Risk Assessment Instrument-Revised (VPRAI-R) score was 0, she had no prior criminal record, and she was about to start school to get her bachelor's degree. Defense counsel further argued:

"[I]f the Court does find that my client poses a risk to the community, I think it's clear that there are conditions, if the Court finds any conditions necessary, to keep the community safe including but not limited to those conditions that the Court already released my client on.

My client was aware of this situation just as the State was, and what did my client do? Fully comply with the court order, reported to pretrial services as appropriate, didn't violate any of the other conditions.

If the Court finds that my client is an actual danger to members of the community, I would suggest that an adequate condition would be my client is not to have any contact with someone under the age of—I don't know—16 years old, 18 years old, whatever the Court finds appropriate.

These are very serious allegations, but at this point in time, your Honor, that's all they are. And ordering the defendant to remain in custody, I would suggest in this particular instance, is not necessary, and the Court can see that it's not necessary because she's already been out and been in full compliance with the Court's order so far."

¶ 16    Defendant also introduced a copy of her February 18, 2025, pretrial progress report from the Office of Statewide Pretrial Services (OSPS), which indicated that she had "no new arrests" and that "no issues in compliance" had been brought to the OSPS's attention as of its

searches conducted on February 13 and 14.

¶ 17    The circuit court granted the State's detention motion, finding as follows:

"Based upon the nature and circumstances of the offense, the defendant poses a real and present threat to the safety of any person or persons or the community based on the specific articulable facts of the case.

The Court specifically adopts and incorporates the State's reasoning, and, therefore, based upon the evidence produced and enunciated by the State, no condition or combination of conditions set forth in the [Code] can mitigate the real and present threat to the safety of any person or persons or the community based on the specific articulable facts of the case."

¶ 18    The circuit court's written order stated that it had adopted the State's reasoning in finding that defendant posed a real and present threat to the safety of persons or the community. The order stated the court's finding that defendant was not a flight risk.

¶ 19                        C. Motion for Relief

¶ 20    Defendant filed a motion to reconsider, which the circuit court treated as a motion for relief under Illinois Supreme Court Rule 604(h) (eff. Apr. 15, 2024), arguing the court erred in detaining her. Defendant argued that the State had failed to present sufficient evidence that she posed a real and present threat to a specific person or the community as a whole or that no conditions could mitigate the threat. Defendant further argued that the court erred by "relying on the new charge based on the same facts and not an individualized assessment of the risk Defendant may pose" and by concluding that no conditions could mitigate the risk. She subsequently amended the motion, clarifying her argument and citing specific caselaw.

¶ 21    Defendant's motion was denied, and a timely notice of appeal was filed.

¶ 22                          II. ANALYSIS

¶ 23       Defendant's appeal challenges the circuit court's findings that (1) she posed a real and present threat to the safety of any person or the community based on the specific articulable facts of the case and (2) no conditions could be imposed to reduce or eliminate the dangers posed.

¶ 24                        A. Standard of Review

¶ 25       When a detention hearing proceeds on only proffers and without live witness testimony, we review a detention decision *de novo*. *People v. Morgan*, 2025 IL 130626, ¶ 51. Here, both parties proceeded solely by proffer of evidence; no live witnesses were called. Thus, we are not bound by the circuit court's findings. *Id.*

¶ 26            B. The Threat Posed and Sufficiency of Conditions

¶ 27       Under the Code, the legislature has created a presumption that all criminal defendants are entitled to pretrial release, subject to certain conditions. 725 ILCS 5/110-2(a) (West 2024); *People v. Mikolaitis*, 2024 IL 130693, ¶ 16. The Code requires the State to prove by clear and convincing evidence that "the defendant poses a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case," and that "no condition or combination of conditions set forth in subsection (b) of Section 110-10 of this Article can mitigate (i) the real and present threat to the safety of any person or persons or the community." 725 ILCS 5/110-6.1(e)(2), (3)(i) (West 2024); *People v. Cousins*, 2025 IL 130866, ¶ 25.

¶ 28       We have previously commented that "dangerousness and conditions of release are two sides of the same coin; the nature and severity of the threat necessarily determine the nature and severity of the conditions that could—or could not—mitigate the threat." *People v. Romine*, 2024 IL App (4th) 240321, ¶ 16. This perspective is particularly appropriate in the instant case

because the specific nature of the danger presented may make it more susceptible to sufficient conditions of pretrial release.

¶ 29        Section 110-6.1(g) requires a court to consider "the specific articulable facts of the case" and provides the following nine factors to consider when assessing the real and present threat allegation:

"(1) The nature and circumstances of any offense charged, including whether the offense is a crime of violence, involving a weapon, or a sex offense.

(2) The history and characteristics of the defendant including:

(A) Any evidence of the defendant's prior criminal history indicative of violent, abusive, or assaultive behavior, or lack of such behavior. ***

(B) Any evidence of the defendant's psychological, psychiatric or other similar social history which tends to indicate a violent, abusive, or assaultive nature, or lack of any such history.

(3) The identity of any person or persons to whose safety the defendant is believed to pose a threat, and the nature of the threat.

(4) Any statements made by, or attributed to the defendant, together with the circumstances surrounding them.

(5) The age and physical condition of the defendant.

(6) The age and physical condition of any victim or complaining witness.

(7) Whether the defendant is known to possess or have access to any weapon or weapons.

(8) Whether, at the time of the current offense or any other offense or arrest, the defendant was on probation, parole, aftercare release, mandatory supervised

release, or other release \*\*\*.

(9) Any other factors \*\*\* deemed by the court to have a reasonable bearing upon the defendant's propensity or reputation for violent, abusive, or assaultive behavior, or lack of such behavior." 725 ILCS 5/110-6.1(g) (West 2024).

¶ 30 The court must go beyond the bare allegations of the charging instrument to address " 'the specific articulable facts of the case.' " *Romine*, 2024 IL App (4th) 240321*,* ¶ 19 (quoting 725 ILCS 5/110-6.1(g) (West 2022)). As we noted in *People v. Smith*, 2025 IL App (4th) 241441-U, ¶ 25, the Code requires a determination of dangerousness to " 'be individualized, and no single factor or standard may be used exclusively to order detention.' " (quoting 725 ILCS 5/110-6.1(f)(7) (West 2022)). Moreover, "the fact that a person is charged with a detainable offense is not enough to order detention." *People v. Atterberry*, 2023 IL App (4th) 231028, ¶ 18. " 'The question presented is why *this defendant*, on the facts of *this* case, has been shown by clear and convincing evidence to fall outside of the normal presumption.' " (Emphases in original.) *People v. Adma*, 2025 IL App (4th) 250488-U, ¶ 22 (quoting *People v. Farah*, 2025 IL App (4th) 250322-U, ¶ 42). If the State fails to carry its burden on any of the elements it is required to prove, "the presumption of release remains, and detention is unlawful." *People v. Sorrentino*, 2024 IL App (1st) 232363, ¶ 32 (citing 725 ILCS 5/110-6.1(e) (West 2022)).

¶ 31 The allegations of this case are revolting. Defendant is alleged to have knowingly administered a lethal dose of medication to H.W. knowing it created a strong probability of causing him great bodily harm or death. The alleged offense is all the more heinous because it was directed against a helpless infant who depended on defendant and her paramour for his health, safety, and security. Defendant's delay in seeking prompt medical care only adds to the impression of her disregard for H.W.'s well-being. The facts would strongly support the conclusion that defendant

would present a threat to the safety of any other infant or vulnerable person placed in her care. It is, however, difficult to conclude on this record that she would present "a real and present threat" to any person *not* meeting that description, or to the community at large. The State presented no evidence beyond the nature and circumstances of the alleged crime at issue. Defendant had no prior criminal convictions, and her VPRAI-R risk assessment score was 0. She had complied with all conditions of her earlier release for a period of weeks.

¶ 32    We conclude that the State has proved that defendant would present a danger to another vulnerable individual under similar circumstances, but we must be cognizant of the very specific nature of that danger as we proceed to examine whether it might be sufficiently mitigated by appropriate conditions.

¶ 33    There is no evidence that any infant or other vulnerable person is in defendant's care. Indeed, in light of these allegations, it seems highly unlikely that defendant would be so entrusted again. Regardless, if there were any concern that such a situation might arise during the time defendant is on pretrial release, the circuit court could impose a condition prohibiting it. It is again relevant that defendant had no prior convictions, the lowest possible risk assessment score, and a record of several weeks' compliance on pretrial release. Consequently, it would appear that conditions of release would adequately mitigate any danger defendant might pose by ensuring that no other infant or other vulnerable person is entrusted to her care. This does not in any way diminish the seriousness of the allegations against defendant. It simply means that, under the scheme given to us by the legislature, she will not be held in jail as she awaits trial on those serious charges; she will instead be subject to appropriate restrictions as a condition of release. We note that the State does not argue that defendant presents a flight risk.

¶ 34    C. Remand for Imposition of Conditions

¶ 35     In *Cousins*, the supreme court stated that "the State's failure to satisfy its burden is as if no petition to detain had been filed, and the presumption of release applies." *Cousins*, 2025 IL 130866, ¶ 36. In that circumstance, "the remedy is to remand for a hearing on the conditions of release," at which "the circuit court shall impose the mandatory conditions required by the [Code] and may impose additional conditions at its discretion to ensure the appearance of defendant and the safety of the community." *Id.* (citing 725 ILCS 5/110-5(c), 10 (West 2022); *Sorrentino*, 2024 IL App (1st) 232363, ¶¶ 42, 44). When the State has failed to meet its burden of proof, the circuit court must deny the State's petition and impose "the least restrictive conditions or combination of conditions necessary to reasonably ensure *** the safety of any other person or persons or the community." 725 ILCS 5/110-5(c) (West 2024).

¶ 36     We conclude that the State failed to show by clear and convincing evidence that no conditions or combination or conditions could mitigate any threat posed by defendant. Accordingly, consistent with *Cousins*, we reverse and remand this case for a determination of appropriate conditions of release under subsections 110-5(c) and 10(b) of the Code.

¶ 37                                III. CONCLUSION

¶ 38     For the reasons stated, we reverse the circuit court's judgment and remand this case for a determination of the appropriate conditions of release as contemplated by subsections 110-5(c) and 10(b). *Cousins*, 2025 IL 130866, ¶ 36.

¶ 39     Reversed and remanded.

¶ 40     JUSTICE DeARMOND, dissenting:

¶ 41     I dissent. Determining the degree of a person's dangerousness is not an actuarial process or a mathematical equation. I would find the circuit court did not err in granting the State's motion and denying defendant pretrial release.