NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2026 IL App (4th) 260306-U

NO. 4-26-0306

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
June 16, 2026
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
|     Plaintiff-Appellee, | ) | Circuit Court of |
|     v. | ) | Peoria County |
| KALEEYAH E. SPRINKLE, | ) | No. 25CF373 |
|     Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Sean W. Donahue, |
| | ) | Paul E. Bauer, |
| | ) | David A. Brown, |
| | ) | Judges Presiding. |

JUSTICE ZENOFF delivered the judgment of the court.
Justices Doherty and Grischow concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The appellate court affirmed the trial court's order granting the State's second petition to deny defendant pretrial release, as defendant waived both arguments on appeal.

¶ 2    Defendant, Kaleeyah E. Sprinkle, appeals an order denying her motion for relief after the trial court granted the State's second petition to deny her pretrial release pursuant to article 110 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/art. 110 (West 2024)). We affirm.

¶ 3    I. BACKGROUND

¶ 4    On May 8, 2025, the State charged defendant by information with four counts of aggravated battery (720 ILCS 5/12-3.05(b)(1)-(2) (West 2024)), alleging that she "did knowingly cause great bodily harm or permanent disability or disfigurement to [Ami. R. (referred to by the

parties as A.R.1)], a child under 13 years of age in that she struck him, causing permanent injury to his brain," "a laceration to his liver and spleen," and "a fracture to his pelvis," and additionally struck Ama. R. (referred to by the parties as A.R.2), "causing a bruise on her face." On the same day, the State filed a petition to deny defendant pretrial release.

¶ 5        The trial court, Judge David A. Brown presiding, held a hearing on the detention petition the same day. The State proffered that on May 6, 2025, defendant brought one-year-old Ami. R. to the fire station because he was unresponsive. He was immediately transported to the hospital for treatment. Officers spoke to defendant's neighbor, who witnessed a woman and man exit defendant's apartment with "a baby that appeared lifeless" and another baby "wrapped in a blanket" and enter a white vehicle. Officers observed and stopped that white vehicle, which a man named Zaxton Johnson was driving. In the back seat of Johnson's car, police found Ama. R., Ami. R.'s twin sister, "completely wrapped and covered in a blanket," with "a swollen lip[ and] a large amount of bruising and swelling to her left eye and the left side of her face." Police officers were later informed that Ami. R. "had suffered severe brain damage" and "was not responding to any stimuli, had no signs of consciousness, no brain activity." He had "also suffered a laceration to his liver and to his spline [*sic*] and also a pelvic fracture." He had a low temperature, which indicated that the brain injury "wasn't recent or it hadn't just occurred."

¶ 6        Officers spoke to defendant, who stated that she lived alone and had sole custody of both children. She "speculated that both of the children's injuries were an accident," and she "didn't know how they occurred, but she thought that they may have or [Ama. R.] could have possibly fallen off of a couch." However, Ami. R.'s treating physician "reported that the injuries were caused by non-accidental trauma and could not have been the result of a simple fall off of a

couch." The physician further "indicate[d] that the severe brain injuries to [Ami. R. were] nonsurvivable and will certainly, eventually, *** result in his death."

¶ 7        Defendant proffered that she was scheduled to start school to be a stenographer in June 2025, "[i]f she were to remain in custody, she may lose *** her home," and "she would follow any conditions the Court found appropriate."

¶ 8        The State argued that defendant posed a real and present threat that conditions could not mitigate. In turn, defendant emphasized that she "has only failed to appear one time in a traffic case" and scored a 2 on the Virginia Pretrial Risk Assessment Instrument-Revised, which was "the lowest level that can be scored." Other than the traffic case, she had no criminal history. Defendant also asserted that "this is a situation that's unlikely to reoccur," as "[t]here's been nothing presented that there's other minor children in [her] custody." However, she conceded that she was charged with detainable offenses. When asked by the trial court, the State indicated that Ama. R. was in the hospital, but she would be released into the custody of defendant's mother.

¶ 9        The trial court found that the State had met its burden of showing that the proof was evident that defendant committed the offenses and posed a real and present threat to the safety of Ami. R. and Ama. R. However, the court found that "[t]here's nothing in her criminal history, the Pretrial Report, or anything else, that would suggest that she's a real and present threat to the community as a whole." Though the court noted that it could not find "by clear and convincing evidence[ ] that she directly inflicted [the injuries] on her children," it found that "she knew of the injuries." However, the court ultimately found that even though defendant "does present some element of risk to [Ama. R.]," there were conditions of release that would "mitigate the risk to [Ama. R.]." The court thus denied the State's detention petition and ordered defendant not to have contact with the minor children, anyone under the age of 18, and Johnson, as well as to "submit to

home confinement and electronic monitoring and the other standard conditions of pretrial release." Defendant indicated she was willing to comply with the conditions.

¶ 10 On May 13, 2025, the State filed an indictment charging defendant with first degree murder (720 ILCS 5/9-1(a)(1) (West 2024)), for causing the death of Ami. R., and aggravated battery (charged under section 12-3.05(d)(1) (720 ILCS5/12-3.05(d)(1) (West 2024))), for striking Ama. R.'s face and body.

¶ 11 On May 14, 2025, the State filed a second petition to deny defendant pretrial release. The trial court, Judge Paul E. Bauer presiding, held a hearing on the petition on May 15, 2025. The State proffered the same information as at the first hearing, with the following additions. Ami. R. was 21 months old on May 6, 2025, when defendant brought him, unresponsive, to the fire station. A bloody towel was found in the trunk of the white SUV where Ama. R. was found. At the State's request and without objection, the court admitted into evidence nine photographs and two videos. Those exhibits do not appear in the record on appeal. One of the videos was apparently body camera footage of the officer who found Ama. R. and removed her from the white SUV. The State represented that in the video, Ama. R. "appears to be terrified, immediately grabs for the police officer, who is a stranger to her, is not properly secured in a restraint and has obvious injuries to her person." Ama. R. had "bruising on her face, arm, back, and left ear" and "abrasions on her right leg, left buttocks, left arm, back, and neck." In addition to the injuries discussed at the previous hearing, Ami. R. "also had scratches and blood around his anus and bruising and abrasions on his neck." Ami. R. "passed away on May 9th," and "[t]he official cause of death was blunt force trauma." The State added that all the children's injuries were determined to be acute—that is, inflicted within 72 hours—other than Ami. R.'s pelvic fracture.

¶ 12    The State further proffered that defendant "lived alone and she had sole custody of the two children," and "in the two weeks leading up to the incident, the twins had not been left alone with anyone else, that she had been supervising them during the entire two-week period before [Ami. R.] was dropped off at the fire station." The previous day, defendant was at Johnson's apartment, but "the twins were not left unsupervised or were not left alone with Johnson." Defendant initially told officers that Ami. R. "was sitting on the couch and she left him alone to take a shower and came back and he was limp on the floor in his playpen," but "the autopsy showed that the injuries could not be explained by a simple fall."

¶ 13    According to the State, Johnson was interviewed and told officers that "he was at the Defendant's house almost daily over the past few weeks because he sold the Defendant cannabis and he smoked cannabis in her residence." He stated that on May 6, 2025, defendant was holding Ama. R., "then happened to notice that [Ami. R.] didn't look right," at which point, defendant "panicked and sought help." Both defendant and Johnson claimed that Ama. R. had fallen off a couch at Johnson's residence on May 5, 2025, while defendant was there cleaning, and "she was just fine and only had a small bruise on her cheek," which defendant claimed "must have spread."

¶ 14    In arguing that defendant posed a real and present threat, the State emphasized that defendant was using cannabis around her children regularly and when she brought Ami. R. to the fire station, she did not bring Ama. R., who was "brutally beaten," or seek medical attention for her. Instead, defendant left her in the care of Johnson, who was a "known sex offender" and "has a previous conviction for a sex offense in which the victim was under the age of nine." The State argued that based on the nature and circumstances of the offense, the age and physical condition of the victims, the statements attributed to defendant, and the fact that defendant was on pretrial

release in a traffic case at the time, in which she failed to appear in August 2024, defendant posed a real and present threat to Ama. R. The State added that after defendant was initially arrested but before Ami. R. died,

> "[t]here was a jail call that was made by the Defendant in which she said, prior to that first detention hearing, that she assumed that the Court *** was going to make her stay away from her kids and she indicated to the person she was talking to that she would not follow that, that she would go be with [Ami. R.] regardless."

The State asserted that while defendant "can do no further harm to [Ami. R.]," she has already indicated that she would not comply with conditions that would prevent her from seeing Ama. R., who was in the custody of defendant's mother.

¶ 15       The trial court ultimately granted the State's detention petition and found that "the proof is evident and the presumption great the Defendant has committed a qualifying offense," that defendant posed a real and present threat "based upon the nature and circumstances of the offense, as well as the Defendant's history, character, and condition," and that no condition or combination of conditions could mitigate that threat. The court noted that "it's clear that the care, custody, and control of these 21-month-old children were clearly in the possession of the Defendant at the time these injuries occurred."

¶ 16       On February 27, 2026, defendant filed a motion for relief pursuant to Illinois Supreme Court Rule 604(h)(2) (eff. Apr. 15, 2024). She asserted that the trial court erred in finding that no conditions could mitigate her dangerousness, as (1) she had a low risk level, (2) her criminal history only included one misdemeanor offense for driving on a suspended license, (3) she "does not have any other priors to suggest she is a danger to other minor children, other individuals

or the community at large," and (4) she "only failed to appear 1 time to Court" in her traffic misdemeanor case.

¶ 17        The trial court, Judge Sean W. Donahue presiding, held a hearing on defendant's motion for relief on March 12, 2026. Based on *People v. Thomas*, 2025 IL App (4th) 251082-U, defendant argued that there were conditions of release that the court could impose to mitigate her dangerousness. She also asserted that "[t]here wasn't a change of circumstances" between the State's first and second detention petitions, "other than the increased charge being filed." The State argued *Thomas* was distinguishable, as the nature and circumstances of the offenses were not comparable and there was reason to doubt defendant's compliance with court conditions in this case. The State reiterated that defendant said on a jail phone call that she would not comply with any conditions ordering her to stay away from Ami. R. and she had a failure to appear in her misdemeanor traffic case.

¶ 18        The trial court noted that the factual basis presented to Judge Brown at the hearing on the State's initial detention petition was largely the same as the basis presented to Judge Bauer in support of the second petition. To that end, at the initial detention hearing, "it was in the record that it wasn't a question of whether [Ami. R.] was going to die" but "simply a question of when," so "it was pretty clear to [Judge Brown] that there were, in fact, likely to be charges of murder brought against the defendant." The court was unsure as to whether the State's filing of a second detention petition upon the filing of the new charges was "actually the proper procedure, but *** maybe it is," and it ultimately concluded that "that's neither here nor there." The court reinforced its belief that "[Judge Bauer] heard a substantially similar factual basis with regards to the injuries sustained by the minor children" but acknowledged there was "possibly a more thorough recitation as to the potential culpability of the defendant than Judge Brown had heard." The court noted that

"[t]here was certainly more information provided to [Judge Bauer] with regards to who had contact with the minor children, the fact that they weren't left alone with anybody." The court believed *Thomas* was distinguishable because the only minor child in danger in that case had passed away, while in this case, one child was still alive and currently residing with a family member, and defendant's jail call "raises substantial concern in this Court's eyes with regards to the possibility of some form of harm being done to that child." The court ultimately found that, despite her lack of a criminal history, defendant's jail phone call and her previously missed court appearance indicated that she would not comply with conditions and was sufficient to deny defendant's motion for relief.

¶ 19   This appeal followed.

¶ 20         II. ANALYSIS

¶ 21   On appeal, defendant asserts that Judges Bauer and Donahue erred (1) by allowing the State to file a second petition to deny pretrial release and (2) in finding that defendant posed a real and present threat to any individual or the community.

¶ 22        A. Second Detention Petition

¶ 23   Under section 110-6.1(e) of the Code, "defendants shall be presumed eligible for pretrial release." 725 ILCS 5/110-6.1(e) (West 2024). The State must file a detention petition "at the first appearance before a judge, or within the 21 calendar days *** after arrest and release of the defendant," and the trial court "shall immediately hold a hearing on the petition." 725 ILCS 5/110-6.1(c)(1)-(2) (West 2024). The statute also separately provides, "If the State seeks to file a second or subsequent petition under this Section, the State shall be required to present a verified application setting forth in detail any new facts not known or obtainable at the time of the filing of the previous petition." 725 ILCS 5/110-6.1(d)(2) (West 2024).

¶ 24 Defendant contends on appeal that there was no statutory basis for the State's second detention petition, where it was based on the same conduct underlying the initial charges and Judge Brown knew at the first hearing that Ami. R.'s injuries would result in his death.

¶ 25 Importantly, "any issue not raised in the motion for relief, other than errors occurring for the first time at the hearing on the motion for relief, shall be deemed waived." Ill. S. Ct. R. 604(h)(2) (eff. Apr. 15, 2024). Defendant did not argue in her written motion for relief that the State's second detention petition lacked a statutory basis. Rather, she merely argued the merits of whether she should be detained and contended that conditions of release could mitigate her dangerousness. Although defendant mentioned at the hearing on the motion for relief that "[t]here wasn't a change of circumstances other than the increased charge being filed," it was in the context of arguing that she lacked a criminal history, and therefore, conditions of release would be appropriate. Defendant did not cite section 110-6.1(d)(2) or its language requiring a second or subsequent petition to set forth "any new facts not known or obtainable at the time of the filing of the previous petition." 725 ILCS 5/110-6.1(d)(2) (West 2024). This offhand mention of changed circumstances did not sufficiently raise a challenge to the statutory basis for the second petition. The trial court likewise did not believe this issue had been raised, as Judge Donahue noted that he was "a little confused as to whether or not that's actually the proper procedure," but he concluded that "that's neither here nor there." Defendant's argument that the State lacked a statutory basis for the second petition has therefore been waived on appeal. See Ill. S. Ct. R. 604(h)(2) (eff. Apr. 15, 2024).

¶ 26 Defendant contends we may review her claim for either plain error or ineffective assistance of counsel, which provide exceptions to the general forfeiture rules. However, in *People*

*v. Nettles*, 2024 IL App (4th) 240962, ¶¶ 25, 29, this court held that both doctrines were generally inapplicable in pretrial detention decisions.

¶ 27 To establish ineffective assistance of counsel, a defendant must show (1) objectively unreasonable performance by counsel and (2) prejudice from that deficient performance. *Nettles*, 2024 IL App (4th) 240962, ¶ 24. This court explained in *Nettles* that "[i]n the particular context of a pretrial detention decision, however, we fail to see how the second *Strickland* [*v. Washington*, 466 U.S. 668 (1984),] factor—prejudice—can be shown," as "[t]he detention decision is not closed; indeed, it cannot be, as it must be revisited at every subsequent court date." *Nettles*, 2024 IL App (4th) 240962, ¶ 25.

¶ 28 The same is true here. Although defendant was not initially detained on the State's first petition, and thus, not subject to review of her continued detention at every subsequent hearing as required by section 110-6.1(i-5) (725 ILCS 5/110-6.1(i-5) (West 2024)), there were procedural mechanisms available to revisit and modify the initial order denying pretrial detention. Even if defendant's counsel had objected and the trial court agreed that the State lacked a statutory basis for filing what it styled as a second detention petition, the State could have filed a motion for relief pursuant to Rule 604(h)(2) arguing either that the court's initial detention decision was incorrect or that there were changed circumstances that necessitated a review of that decision. Defendant could thus still have been detained pretrial, even if her counsel had raised the objection to the State's second detention petition she now says should have been presented. Moreover, "[s]ubject to the limitation that no more than one appeal be brought at one time (Ill. S. Ct. R. 604(h)(11) (eff. Apr. 15, 2024)), [the] defendant could *still* file a proper motion for relief and take a proper appeal." (Emphasis in original.) *Nettles*, 2024 IL App (4th) 240962, ¶ 25. "It is difficult to discern how a defendant could establish that he has been prejudiced by his attorney 'dropping the ball' when the

ball is still in the air." *Nettles*, 2024 IL App (4th) 240962, ¶ 25. Therefore, defendant cannot show that she was prejudiced by her counsel's failure to object to the State's second petition.

¶ 29    Under plain error review,

> "[a] reviewing court may address forfeited arguments under the exception when a 'clear or obvious error occurred' and 'the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error,' or the error is 'so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process.' " *Nettles*, 2024 IL App (4th) 240962, ¶ 28 (quoting *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007)).

However, this court held in *Nettles* that plain error does not cure an omission from a motion for relief. *Nettles*, 2024 IL App (4th) 240962, ¶ 29. Because defendant did not raise this claim in her motion for relief, she has waived it under Rule 604(h)(2), and plain error review cannot apply.

¶ 30                                B. Dangerousness

¶ 31    Defendant next asserts that Judges Bauer and Donahue erred in finding that she poses a real and present threat to any person or the community.

¶ 32    To detain a defendant, the State must prove by clear and convincing evidence that (1) the proof is evident or presumption great that the defendant committed a detainable offense; (2) the defendant poses a real and present threat to the safety of any person, persons, or the community, based on the specific, articulable facts of the case; and (3) no condition or combination of conditions can mitigate the real and present threat to the safety of any person or the community, based on the specific facts of the case. 725 ILCS 5/110-6.1(e)(1)-(3) (West 2024). Under this

framework, "the fact that a person is charged with a detainable offense is not enough to order detention." *People v. Atterberry*, 2023 IL App (4th) 231028, ¶ 18.

¶ 33    As discussed above, "any issue not raised in the motion for relief, other than errors occurring for the first time at the hearing on the motion for relief, shall be deemed waived." Ill. S. Ct. R. 604(h)(2) (eff. Apr. 15, 2024). In defendant's motion for relief and at the motion for relief hearing, she argued only that there were conditions of release that could mitigate her dangerousness. She does not reassert that argument on appeal; instead, she argues that the trial court erred in finding that she poses a real and present threat to any person or the community. As she did not raise this issue in her motion for relief or at the hearing on the motion, this issue is waived and is not reviewable on appeal. See Ill. S. Ct. R. 604(h)(2) (eff. Apr. 15, 2024).

¶ 34                           III. CONCLUSION

¶ 35    For the reasons stated, we affirm the trial court's judgment.

¶ 36    Affirmed.